Jay LYNOTT, Plaintiff-Appellant,

v.

J. D. HENDERSON, Warden, etc., et al., Defendants-Appellees.

No. 77-2125.

United States Court of Appeals, Fifth Circuit.

Jan. 25, 1980.

Frank P. Samford, III, Atlanta, Ga. (Court-appointed), for plaintiff-appellant.

William E. Turnipseed, Douglas P. Roberto, Asst. U. S. Attys., Atlanta, Ga., for defendants-appellees.

Before GODBOLD, RONEY and FRANK M. JOHNSON, Jr., Circuit Judges.

GODBOLD, Circuit Judge:

In 1973, appellant Lynott, a prisoner incarcerated in the federal prison at Atlanta, Georgia, sued federal prison officials alleging that they had violated his constitutional rights, largely by discriminatory application of the prison's visitation regulations in refusing to permit him visits by Nan Bornstein, Jacqueline Miranda, Mr. and Mrs. Albert Dodenhoff, and Carol Roth, among others. He sought various sorts of relief,

including declaratory judgments, injunctions, compensatory visits, and damages.

The complaint was initially dismissed without prejudice for failure to exhaust administrative remedies available within the prison. Lynott subsequently pursued these remedies only with regard to his request to visit with Nan Bornstein. After the prison officials reaffirmed their decision, the district court permitted Lynott to proceed with his complaint but only as to his claims regarding Nan Bornstein.

Lynott moved for and was denied a temporary restraining order to enable him to be visited by Ms. Bornstein. The defendants moved to dismiss under Fed.R.Civ.P. 12(b)(6). The court granted the motion, relying heavily on several unsworn statements submitted by the defendants. Lynott appealed. In an unpublished decision we remanded for further proceedings. *Lynott v. Henderson,* No. 75–1601 (CA5, Nov. 28, 1975).

On remand, the defendants renewed their motion to dismiss, submitting affidavits and documents to support their decision to exclude Nan Bornstein from the prison. These documents showed that in her original application to visit Lynott she stated that her relationship with Lynott was "friend +" and that she had met him by "love at first sight—beach". Also she did not correct an entry that showed inaccurately that she was single. The defendants also provided letters from Nan Bornstein's husband to the prison officials initially asking them to terminate his wife's visitation privileges, and later reluctantly asking them to reinstate her privileges. Prison officials also stated that the husband had orally threatened to sue them if they permitted his wife to see Lynott, and that when Nan Bornstein was informed of the revocation of her visiting privileges, she cursed, became verbally abusive with one of the prison personnel, and kicked in a glass panel by the front door of the prison. Finally, the defendants submitted copies of forms sent to Lynott giving him notice when Ms. Bornstein was added to and removed from his visitation list.

In response, Lynott submitted a counter-affidavit in which he stated that he had witnesses who would testify that Nan Bornstein had not become violent or abusive when she was told that she could not visit Lynott. He also gave information tending to show that the defendants had altered their copies of the forms showing the changes in visitation lists. The district court held that even if Lynott's statements were true, "the remaining reasons for denying Ms. Bornstein visiting privileges were 'reasonable, justifiable, and necessary.'" Again it dismissed the complaint. Lynott appeals.

■ Convicted prisoners have no absolute constitutional right to visitation. *See Newman v. State of Alabama,* 559 F.2d 283 (CA5, 1977), *rev'd in part sub nom., Alabama v. Pugh,* 438 U.S. 781, 98 S.Ct. 3057, 57 L.Ed.2d 1114 (1978); *McCray v. Sullivan,* 509 F.2d 1332 (CA5, 1975); *cf. Jones v. North Carolina Prisoners' Union,* 433 U.S. 119, 125–26, 131–33, 97 S.Ct. 2532, 2537–38, 53 L.Ed.2d 629, 638, 642–43 (1977).[1] Even so, limitations of visitation may be imposed only if they are necessary to meet legitimate penological objectives, such as rehabilitation and the maintenance of security and

---

1. Although prisoners have a general constitutional right to visit with their legal counsel, *see Procunier v. Martinez,* 416 U.S. 396, 419–22, 94 S.Ct. 1800, 1814–15, 40 L.Ed.2d 224, 243–45 (1974), even this right is not absolute, for it is clear that prisons may ban disruptive lawyers. *See Cruz v. Beto,* 603 F.2d 1178, 1185 (CA5, 1979). Prisoners do, however, have a right of access to a threshold level of legal information or aid. *See, e. g., Bounds v. Smith,* 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977); *Procunier v. Martinez, supra; Johnson v. Avery,* 393 U.S. 483, 89 S.Ct. 747, 21 L.Ed.2d 718 (1969). Lynott asserts that banning Nan Bornstein denies him this minimal right of access because she had provided him with books and legal fees in the past. This claim fails for two reasons. First, it is largely based on the defendants' alleged interference with Lynott's mail, particularly of legal documents with the Bornsteins. This correspondence claim was denied by the defendants and was not raised on appeal. Moreover, Lynott has not alleged that the sources of legal information available within the prison were inadequate.

order. *See Bell v. Wolfish,* 441 U.S. 520, 547, 99 S.Ct. 1861, 1878, 60 L.Ed.2d 447, 474 (1979); *Pell v. Procunier,* 417 U.S. 817, 825, 94 S.Ct. 2800, 2805, 41 L.Ed.2d 495, 503 (1974); *Procunier v. Martinez,* 416 U.S. 396, 413, 94 S.Ct. 1800, 1811, 40 L.Ed.2d 224, 240 (1974); *Hamilton v. Saxbe,* 428 F.Supp. 1101, 1111 (N.D.Ga.1976), *aff'd sub nom. Hamilton v. Bell,* 551 F.2d 1056 (CA5, 1977) (balancing test). Moreover, the court must look to see whether the prison's visitation practices actually further these objectives, *see Rudolph v. Locke,* 594 F.2d 1076, 1077 (CA5, 1979); *Morales v. Schmidt,* 489 F.2d 1335, 1343 (CA7, 1973), *modified on rehearing en banc,* 494 F.2d 85, 87 (CA7, 1974), and whether prisoners are given adequate procedural safeguards, including *"meaningful* written responses" to their requests. *Hamilton v. Saxbe, supra,* 428 F.Supp. at 1112 (emphasis original).

The prison's regulations governing visitation privileges meet these requirements. In particular, they provide that such privileges "may be extended to friends and other nonrelatives if it can be ascertained that the association of friendship is a genuinely constructive one and that the offender would profit from such continued contact." Bureau of Prisons Policy Statement 7300.4A.e.3 (April 24, 1972).[2] In a previous class action brought by Georgia federal prisoners, this court held that these regulations are neither unconstitutionally vague or overbroad nor do they unduly interfere with prisoners' constitutional rights of association, privacy, and liberty. *Hamilton v. Bell,* 551 F.2d 1056 (CA5, 1977).

In reviewing the district court's decision regarding Lynott's efforts to see Nan Bornstein, we may not consider her alleged violence since it was disputed. Also, at the time, prison officials apparently did not give Lynott an adequate explanation of their reasons for banning her.[3] However, Dr. Bornstein's reactions to his wife's visiting with Lynott, particularly his threats to sue, suggest that permitting her to visit could interfere with the orderly running of the prison. Moreover, Ms. Bornstein's responses on her application to visit suggest that her relationship with Lynott might not be conducive to his rehabilitation. These factors are sufficient to support the defendants' decision regarding Ms. Bornstein, particularly since "in the absence of substantial evidence in the record to indicate that the officials have exaggerated their response to these considerations, courts should ordinarily defer to their expert judgment in such matters." *Pell v. Procunier, supra,* 417 U.S. at 827, 94 S.Ct. at 2806, 41 L.Ed.2d at 504; *see Bell v. Wolfish, supra,* 441 U.S. 520 at 547, 99 S.Ct. at 1878, 60 L.Ed.2d at 474; *cf. Cruz v. Beto,* 603 F.2d 1178, 1185 (CA5, 1979) (burden of overcoming presumption of deference met by showing that prison officials had acted in bad faith and that attorney had not disrupted prison but rather had simply been trying to vindicate prisoners' rights). There has been no adequate showing of such exaggeration here.

*Hamilton v. Saxbe* sustained prison officials' decision under the regulations at issue here to deny a prisoner permission to visit a woman because on his application he had supplied false information as to her marital status and because the prison at that time generally did not allow a married woman to visit without her husband or the inmate's wife. 428 F.Supp. at 1107–08. In that instance, there was even less cause for barring visitation than in the situation involving Nan Bornstein. We therefore affirm this aspect of the district court's decision.

Turning to Lynott's claims that he has been unjustly denied visitation with Jacqueline Miranda, the Dodenhoffs, and Carol Roth, we hold that he has adequately

---

2. This litigation involves some actions taken prior to April 24, 1972; at that time the prison regulations provided that "[n]ormally only members of the immediate family [would] be approved as visitors." Bureau of Prisons Policy Statement A–7300.52.3.1. (April 14, 1972).

3. Lynott presented evidence that, on the form advising him that Nan Bornstein's visiting privileges had been revoked, the only explanation given was "administrative reasons." The defendants' copy of that form allegedly was altered by adding Dr. Bornstein's request and a reference to her violence.

preserved his right to appeal the district court's refusal to hear these claims, consistent with the liberal treatment given by the court to papers filed by indigents proceeding *pro se*. *See Coppedge v. U. S.,* 369 U.S. 438, 442 n.5, 82 S.Ct. 917, 8 L.Ed.2d 21 (1962). These claims, moreover, are not moot. Although the record is unclear, Lynott apparently has never been permitted to visit with Carol Roth, and even though Ms. Miranda and the Dodenhoffs were placed on his visiting list in June 1973, thereby obviating his need for injunctive relief, he still seeks damages as to all denials of visitations by these persons and compensatory visits for the period when he was not permitted to see Ms. Miranda.

The Bureau of Prisons cannot provide Lynott with damages, which is at least the greater part of the remedy that he seeks. Any attempt to pursue administrative remedies at this time would, therefore, be futile. This portion of the case must be remanded for further proceedings. *See U. S. ex rel. Caruso v. U. S. Board of Parole,* 570 F.2d 1150, 1152–53 (CA3), *cert. denied,* 436 U.S. 911, 98 S.Ct. 2249, 56 L.Ed.2d 411 (1978).

Lynott's counsel indicated at oral argument that he was uncertain of the whereabouts of his client. As an initial matter on remand, the district court should attempt to ascertain whether Lynott is available and desirous of pursuing his claim. If not, dismissal for lack of prosecution may be appropriate.

AFFIRMED in part, REVERSED in part and REMANDED.