Henry BRISBON, Plaintiff,

v.

Michael P. LANE, Director of the Illinois Department of Corrections, and Daniel C. Bosse, Warden of the Joliet Correctional Center, Defendants.

No. 82 C 2125.

United States District Court,
N.D. Illinois, E.D.

Jan. 26, 1983.

Henry Brisbon, pro se.

Tyrone Fahner, Atty. Gen. by Michael T. Mullen, Asst. Atty. Gen., State of Ill., Sp. Litigation Div., Chicago, Ill., for defendants.

## MEMORANDUM ORDER

BUA, District Judge.

Plaintiff Henry Brisbon, an inmate currently on "Death Row" at the Menard Correctional Center in Menard, Illinois and formerly at the Joliet Correctional Center in Joliet, Illinois, brings this pro se action pursuant to 42 U.S.C. § 1983 seeking declaratory and injunctive relief for the alleged violation of his rights under the First and Fourteenth Amendments. Before the Court is the defendants' Motion to Dismiss for failure to state a claim upon which relief can be based pursuant to Fed.R.Civ.P. 12(b)6. For the reasons stated herein, the Motion to Dismiss is hereby granted.

The core issue in the plaintiff's complaint concerns the girlfriend of Mr. Brisbon, Ms. Valerie Davis. On December 7, 1980, Ms. Davis, while employed as a librarian assigned to the Joliet Correctional Facility, was accused of aiding inmate Francis Scott in an escape attempt. Although an investigation of the matter was terminated as "inconclusive" as to the guilt of Ms. Davis, prison officials nevertheless considered her a security risk and issued a "stop-order," effective statewide, which prevents her from visiting the plaintiff while the latter is in the custody of the Illinois Department of Corrections.[1] Following a series of letters sent by Ms. Davis to various public officials in which she sought to have the "stop-order" lifted, plaintiff filed a grievance pursuant to Ill.Rev.Stat. ch. 38 par. 1003–8–8 (1981). When such grievance was found to be without substance, plaintiff filed the instant lawsuit claiming that his

---

1. As a result of her alleged activities, Ms. Davis was terminated from her position with the Bur Oak Library System. As Ms. Davis is not a party to the instant lawsuit, the complaint can-

not and does not challenge her termination or her right to visit the plaintiff, but merely asserts his right to have her as a visitor.

First Amendment right of association had been violated by virtue of his having been denied the right to have Ms. Davis as a visitor.[2]

It has never been clearly established that prisoners have an undisputed constitutional right to have visitors. *Ramos v. Lamm,* 639 F.2d 559 (10th Cir.1980), *cert. denied,* 450 U.S. 1041, 101 S.Ct. 1759, 68 L.Ed.2d 239 (1981); *Lynott v. Henderson,* 610 F.2d 340 (5th Cir.1980); *White v. Keller,* 588 F.2d 913 (4th Cir.1978), *aff'g.* 438 F.Supp. 110 (D.Md.1977); *Walker v. Pate,* 356 F.2d 502 (7th Cir.1966), *cert. denied,* 384 U.S. 966, 86 S.Ct. 1598, 16 L.Ed.2d 678. Indeed, "the concept of incarceration itself entails a restriction on the freedom of inmates to associate with those outside of the penal institution." *Jones v. North Carolina Prisoner's Union,* 433 U.S. 119, 126, 97 S.Ct. 2532, 2538, 53 L.Ed.2d 629 (1977).

Even if visitation were a constitutionally protected right, while it is recognized that convicted prisoners do not forfeit all constitutional protections by reason of their conviction and incarceration, 433 U.S. at 129, 97 S.Ct. at 2539, such rights are subject to restrictions and limitations. *Bell v. Wolfish,* 441 U.S. 520, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). Thus, a prisoner retains unfettered only those rights which are not inconsistent with his or her status as a prisoner or with the legitimate penological objectives of the corrections system. *Pell v. Procunier,* 417 U.S. 817, 822, 94 S.Ct. 2800, 2804, 41 L.Ed.2d 495 (1974). Prison officials are free to take appropriate steps to promote the safety of inmates and prison personnel and to prevent unauthorized entry or exit, even where such action infringes upon a specific constitutional guarantee such as the First Amendment. *Bell v. Wolfish, supra,* 441 U.S. at 547, 99 S.Ct. at 1878; *Jones*

*v. North Carolina Prisoners' Labor Union, supra,* 433 U.S. at 129, 99 S.Ct. at 2539.

Because of the difficulties involved in the daily operation of correctional facilities and because of their particular expertise, prison officials must be accorded wide-ranging deference and broad discretion in the adoption and execution of policies and practices designed to protect and to further institutional security. *Bell v. Wolfish, supra,* 441 U.S. at 547–548, 99 S.Ct. at 1878–79. In cases such as that at bar, the Court must therefore defer to the expertise of the prison administrators unless an abuse of the discretion afforded such individuals has been demonstrated. No such showing has been made in the instant case.

In light of plaintiff's background,[3] it is not unreasonable for prison officials to be overly cautious in dealings with him. Additionally, given that Ms. Davis was never totally cleared of any wrongdoing relating to the escape incident, and indeed is apparently still suspected of playing a role in the attempt, it would be within the discretion of prison and correctional officials to deem her a possible security risk.[4] Were this Court to hold otherwise, it would only serve to undermine the considerable authority necessarily accorded them. Clearly, this Court is in no position to second-guess the officials' conclusions regarding necessary security measures garnered from firsthand observation of the circumstances.

That Ms. Davis was never conclusively found to be guilty of the conduct alleged does not negate the prison officials' determination. Security measures must only be a reasonable response to the legitimate concerns of prison officials and need not meet the test of any stricter scrutiny.

2. The restriction on visitation here challenged merely applies to preclude visits from Ms. Davis and does not affect the plaintiff's right to have other individuals as visitors.

3. Plaintiff's incarceration is the result of his being convicted of a series of particularly brutal murders which took place along Interstate Highway 57. See, *The Death Penalty: An Eye For An Eye,* TIME, January 24, 1983, at 30.

4. Ms. Davis is in no way related to the plaintiff. It has been suggested that relatives of inmates may be preferable to nonrelatives as visitors of prisoners as it is presumed that relatives may better effect the rehabilitative function of prisons. *Ramos v. Lamm,* 639 F.2d 559 (10th Cir. 1980).

 

*Bell v. Wolfish, supra; Inmates of Allegheny County Jail v. Pierce,* 612 F.2d 754, 759 (3rd Cir.1979). No proof beyond a reasonable doubt is therefore required before a stop-order can issue. Given the circumstances of the case, the actions taken by the officials in issuing the stop-order were clearly reasonable and hence, proper.

In light of the foregoing, it is clear that plaintiff's complaint, viewed in the light most favoring the plaintiff, nevertheless fails to state a claim upon which relief can be granted under 42 U.S.C. § 1983. The defendants' Motion to Dismiss is therefore granted and the complaint is ordered dismissed.

IT IS SO ORDERED.