580 So.2d 1210 (1991)
Alan McFadden
v.
STATE of Mississippi.
No. 89-KP-1071.
Supreme Court of Mississippi.
May 3, 1991.
Rehearing Denied June 19, 1991.
*1212 Alan McFadden, pro se.
Mike C. Moore, Atty. Gen., Richard A. Compere, John L. Clay, Sp. Asst. Atty. Gen., Jackson, for appellee.
Before DAN M. LEE, P.J., and SULLIVAN and McRAE, JJ.
SULLIVAN, Justice, for the Court:
Alan McFadden, a state prisoner, filed a Civil Rights Complaint against various prison officials in the Rankin County Circuit Court alleging denial of due process and equal protection when he was transferred from the Rankin County Correctional Facility (RCCF) to the Mississippi State Prison at Parchman. He asked for declaratory and injunctive relief and monetary damages for the intentional conduct of the defendants.
The named defendants in this suit are Charles Jackson, the Commissioner of Corrections; Edgar Joor, Superintendent of the Rankin County Correctional Facility; Donald Cabana, Superintendent of the Mississippi State Prison at Parchman; Margret Bingham, Deputy Warden at RCCF; Lora Cole, Deputy Warden at RCCF; Jackie Parker, Director of Classification at RCCF; and Leanette Jordan, Case Manager Supervisor at RCCF. These defendants allege, as an affirmative defense, that they are immune from this cause of action.
The defendants filed a Motion for Summary Judgment and/or Motion to Dismiss. McFadden responded by filing a Motion for Partial Summary Judgment as to Liability. The court held a hearing on the motions. Thereafter, the court granted the defendants' Motion and overruled McFadden's Motion. McFadden has appealed the court's ruling on the basis that summary judgment was improper since his Complaint raised genuine issues of material fact.

FACTS
On July 21, 1988, a Staff Request for Inmate Classification was entered for Alan McFadden requesting that McFadden be moved from the RCCF to Parchman. The transfer was classified as an "administrative move." McFadden's custody status of `A' would not be changed.
A letter dated July 29, 1988 from Deputy Warden Lora Cole to McFadden explained why the request was made. Evidently, a letter had been written to the Commissioner concerning a Ms. Bell who worked at RCCF. The letter was signed by Walter Leonard but was purportedly written by McFadden. The letter contained allegations against Ms. Bell and led to an investigation. During the investigation, the following had been determined as to McFadden's participation:
(1) Walter Leonard did sign the letter but reported having absolutely no personal knowledge of any of the allegations made therein other than what he had been told by you.
(2) Walter Leonard reportedly did not know that Ms. Bell was being accused of extortion in the letter.
(3) Approporate [sic] action is being taken regarding Ms. Bell's admitted involvement in delivering money to you.
(4) Your transfer from Rankin County was the appropriate action to take considering your involvement in having money sent to the local Western Union for you in Ms. Bell's name. In addition your recent actions towards and threatening statements to Ms. Bell also warranted your being transferred.
*1213 According to McFadden, he was summoned to the Women's Administration Building at RCCF on July 21, 1988. There, he met with defendants Cole, Bingham, Jordan and Parker. He was asked if he had written a letter to the Commissioner concerning Ms. Bell. He responded negatively but the defendants cursed him and verbally abused him saying that he had and that he was being reclassified to Parchman for doing so.
McFadden alleges that the reclassification form contains fraudulent information. Specifically, defendant Jordan was not his unit case manager but she signed the form as such. Also, defendant Lora Cole was not his work supervisor but she signed the form in that capacity. The form, in fact, did not contain the signatures of McFadden's unit administrator, his work supervisor, or his unit case manager. Included on the form was the signature of defendant Winkle as a member of the Classification Team but she was not in the meeting.
Additional allegations were made by McFadden regarding his reclassification. They include the fact that the request was not approved by Mr. Cabana, although the request indicated otherwise, and that the request was not submitted to the Classification Committee twenty-four hours in advance of the classification action. Also, there are no minutes of the meeting and McFadden was classified by individuals and not by the Classification Committee in regular or special meetings. In fact, McFadden alleges that the reclassification was done in retaliation for his alleged activities which included helping other inmates draft grievances.
McFadden and his wife, who were married while in prison, were both incarcerated at RCCF. He was allowed conjugal visits with his wife every Sunday except fifth Sundays and was allowed family visits with his wife and ten-year old son every sixty days. As an `A' custody inmate, he was allowed to participate in various co-ed programs with his wife and he was allowed access to a non-security telephone twenty-four hours a day. He has not been allowed to continue visits with his wife since being transferred to Parchman.
At RCCF, McFadden was employed in the law library. Since being transferred to Parchman, he has been assigned a job at the Cold Storage in the Freezer Crew. He complains of this job for two reasons. First, he says that his best interests are not served because his job in the law library was helping him towards his goal of becoming a paralegal upon his release from prison. Also, he suffers from chronic sinusitis and this job aggravates the problem.
Another of McFadden's grievances concerns his safety. He alleges that his life is in danger at Parchman because he once testified against a correctional officer and that individual is still employed at Parchman. McFadden also alleges that his life has been threatened by a group of prisoners known as the Mississippi Prisoners' Union. He says that the group claims that he acted as an aide and henchman for Superintendent Cabana and that he is in fear of physical harm because of this.

LAW

I.

DID THE LOWER COURT ERR IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON PLAINTIFF'S PROTECTED LIBERTY INTEREST?
McFadden's complaints under this assignment of error are many. He alleges that he has a protected liberty interest in continued classification at the RCCF, in continued visitation with his wife and child, and in continued participation in his job assignment in the law library. Furthermore, he alleges that he was denied procedural due process.

A. STANDARD OF REVIEW
In considering a Motion for Summary Judgment, the lower court must take as true those allegations which are well *1214 pleaded. Considering these and any defenses which have been raised, the Motion must be overruled unless, beyond any reasonable doubt, the court believes that the plaintiff would be unable to prove any facts which would support his claim. McFadden v. State, 542 So.2d 871, 874 (Miss. 1989). The court
must review carefully all of the evidentiary matters before it  admissions in pleadings, answers to interrogatories, depositions, affidavits, etc. The evidence must be viewed in the light most favorable to the party against whom the motion has been made. If in this view the moving party is entitled to judgment as a matter of law, summary judgment should forthwith be entered in his favor. Otherwise the motion should be denied.
Dennis v. Searle, 457 So.2d 941, 944 (Miss. 1984) [quoting Brown v. Credit Center, Inc., 444 So.2d 358, 362 (Miss. 1983)].
On appeal, we conduct de novo review of the grant or denial of a Motion for Summary Judgment. See Newell v. Hinton, 556 So.2d 1037, 1041 (Miss. 1990); Allison v. State Farm Fire & Casualty Co., 543 So.2d 661, 663 (Miss. 1989). Although we must accept well pleaded allegations, where a prisoner is proceeding pro se, the fact that the complaint is not precisely stated nor consistent will not harm his case. A pro se complaint is held "to less stringent standards than formal pleadings drafted by lawyers." Haines v. Kerner, 404 U.S. 519, 529, 92 S.Ct. 594, 596, 30 L.Ed.2d 652, 654 (1972). See also McFadden, 542 So.2d at 875.

B. CLASSIFICATION
In 1976, the United States Supreme Court addressed in two separate opinions the question of whether a prisoner has a liberty interest in being transferred from one correctional institution to a less favorable institution. In Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976), several Massachusetts prisoners alleged that they were denied due process because they were transferred to a less favorable institution without an adequate hearing. The Court said that a valid conviction allows a state to subject the prisoner to the rules promulgated in regard to its prison system as long as the conditions imposed are constitutional. The conviction, in itself, "has sufficiently extinguished the defendant's liberty interest to empower the State to confine him in any of its prisons." Meachum, 427 U.S. at 224, 96 S.Ct. at 2538, 49 L.Ed.2d at 459.
In reaching this conclusion, the Court considered applicable Massachusetts law and found that prison officials in that state have the discretion to move prisoners for any or no reason. A prisoner's expectation of remaining in one facility "is too ephemeral and insubstantial to trigger procedural due process protections as long as prison officials have discretion to transfer him for whatever reason or for no reason at all." Id. at 228, 96 S.Ct. at 2540, 49 L.Ed.2d at 461.
The Supreme Court again considered that question in Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). There, a New York prisoner was transferred from one maximum-security facility to another. The Court reaffirmed its holding in Meachum that
no Due Process Clause liberty interest of a duly convicted prison inmate is infringed when he is transferred from one prison to another within the State, whether with or without a hearing, absent some right or justifiable expectation rooted in state law that he will not be transferred except for misbehavior or upon the occurrence of other specified events.
Montanye, 427 U.S. at 242, 96 S.Ct. at 2547, 49 L.Ed.2d at 471.
The Supreme Court has also approved an interstate transfer. In Olim v. Wakinekona, 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983), the Court found that the prisoner had no protected liberty interest in being transferred from Hawaii to California. The Court summarized its holdings by saying that "[t]hese cases demonstrate that a State creates a protected liberty interest by placing substantive limitations on official discretion" and the prisoner must show "particularized standards or criteria" in order to prove that the interest has been *1215 created. Olim, 461 U.S. at 249, 103 S.Ct. at 1747, 75 L.Ed.2d at 823.
These decisions by the Supreme Court have been the yardstick by which all subsequent decisions concerning the transfer of a prisoner have been measured. Restated, the rule is that "there is no constitutionally based liberty interest that entitles a prisoner to a hearing or any other safeguards before being transferred from one prison to another, absent a state law or regulation conditioning such transfer on proof of misbehavior or other specified events." Matiyn v. Henderson, 841 F.2d 31, 34 (2nd Cir.1988). The language contained in the statute or regulation must be mandatory in nature using such words as `shall', `will' and `must'. Castaneda v. Henman, 914 F.2d 981, 983 (7th Cir.1990).
In Lewis v. Thigpen, 767 F.2d 252 (5th Cir.1985), the Fifth Circuit considered the transfer of a prisoner from Leflore County Restitution Center to the Mississippi State Penitentiary at Parchman. The Court remanded the case to the trial court for a determination of whether the regulations of the Restitution Center created a protectable liberty interest. The regulations concerning transfer from the Center contained the language that "the resident may be transferred for all `major' violations of rules and regulations or `flagrant' nonadherence to treatment plans." Lewis, 767 F.2d at 262. Given that language, the court said that Lewis could very well have expected that he would not be transferred from the Center "absent misbehavior or other specified events." Id.
In accordance with the decisions of the United States Supreme Court, McFadden does not have a protected liberty interest in being transferred from the RCCF to Parchman unless a state law or regulation or prison policy or procedure has by its language conditioned the transfer on misbehavior or some other event. The lower court determined that McFadden was lawfully transferred to Parchman within the lawful discretion of the Mississippi Department of Corrections.
Summary judgment is precluded if there is a genuine issue of material fact. We have examined state law and prison policies and procedures and believe that an issue exists as to whether the language contained therein has created a protectable liberty interest in the transfer of an inmate and if so, whether the State followed the regulations without using fraud in the process. We remand to the lower court for a full factual development on this issue.

C. JOB ASSIGNMENT
An inmate does not have a protected liberty interest in a particular job assignment under the Due Process Clause. See Wallace v. Robinson, 914 F.2d 869, 873 (7th Cir.1990) and Chapman v. Plageman, 417 F. Supp. 906, 907 (W.D.Va. 1976). However, a liberty interest may be created by state law or prison regulations.
To determine whether the inmate has a state created liberty interest, the statute or regulation must "contain particularized substantive standards or criteria" or must "use mandatory language." Hake v. Gunter, 824 F.2d 610, 614 (8th Cir.1987). For instance, the words "in so far as possible" are discretionary in nature and allow prison officials to weigh the assignment against other needs of the institution. Wallace, 914 F.2d at 875. Job assignment is an administrative task with which the courts should not "tamper absent evidence of arbitrariness and discrimination." Chapman, 417 F. Supp. at 908.
The record is silent on the reassignment of McFadden. Again, we examined state law and prison policies and procedures regarding job reassignment and we believe that the language contained therein needs to be examined to determine if the policies create a protectable liberty interest in job reassignment and if so, whether those procedures were followed in McFadden's case. Summary judgment was improper on this issue so we reverse and remand for a full factual development.

D. VISITATION PRIVILEGES
In Kentucky Department of Corrections v. Thompson, 490 U.S. 454, 109 S.Ct. 1904, 104 L.Ed.2d 506 (1989), the United *1216 States Supreme Court held that Kentucky prison regulations did not give prisoners a liberty interest in being allowed visitation with certain people. Several persons were denied visitation with inmates because they had in some way been instrumental in bringing contraband into the facility. This action was taken by prison officials without a hearing.
First, the Court said that the right to visitation with a certain person is not protected by the Due Process Clause since the denial of such is "`well within the terms of confinement ordinarily contemplated by a prison sentence.'" Thompson, 490 U.S. at 461, 109 S.Ct. at 1909, 104 L.Ed.2d at 515 [quoting Hewitt v. Helms, 459 U.S. 460, 468, 103 S.Ct. 864, 869, 74 L.Ed.2d 675 (1983)]. Secondly, the State had not created a liberty interest because "the regulations are not worded in such a way that an inmate could reasonably expect to enforce them against the prison officials." Id. at 465, 109 S.Ct. at 1911, 104 L.Ed.2d at 518. The Court said that the regulations did not contain mandatory language in that "[t]hey stop short of requiring that a particular result is to be reached upon a finding that the substantive predicates are met." Id. at 464, 109 S.Ct. at 1910, 104 L.Ed.2d at 517.
The Fifth Circuit has indicated that a temporary suspension of an inmate's visitation privileges without a hearing does not violate the inmate's due process rights. To require such a hearing "would place the Due Process Clause `astride the day-to-day functioning of state prisons and involve the judiciary in issues and discretionary decisions that are not the business of federal judges.'" Jones v. Diamond, 594 F.2d 997, 1017 (5th Cir.1979) [quoting Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976)].
The Fifth Circuit has also held that prisoners do not have a constitutional right to conjugal visits. See Davis v. Carlson, 837 F.2d 1318, 1319 (5th Cir.1988), and McCray v. Sullivan, 509 F.2d 1332, 1334 (5th Cir.1975). Instead, "visitation privileges are a matter subject to the discretion of prison officials." McCray, 509 F.2d at 1334. But, limitations must meet "legitimate penological objectives, such as rehabilitation and the maintenance of security and order." Lynott v. Henderson, 610 F.2d 340, 342 (5th Cir.1980).
In Lyons v. Gilligan, 382 F. Supp. 198 (N.D.Ohio 1974), the question of whether a prisoner should be allowed conjugal visits with his or her incarcerated spouse was considered. The court said that the absence of such is not excessive punishment nor disproportionate to the crimes committed by the prisoners. The denial of conjugal visitation "is merely a customary concomitant of the punishment of incarceration." Lyons, 382 F. Supp. at 201.
We have examined state law and prison policies and procedures as to visitation rights of inmates. We believe the reason given by prison officials for denying McFadden visitation with his wife, that allowing visitation would place an undue administrative burden on the facility since transportation was unavailable, is within the visitation policies which allow prison officials to limit visitation as is "necessary to maintain order and security." Summary judgment was proper on this issue.

II.

DID THE LOWER COURT ERR IN GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT BASED ON THE INTENTIONAL TORT COMMITTED BY THE DEFENDANTS?

III.

ARE THE DEFENDANTS IMMUNE FROM THIS SUIT?
McFadden alleges that the defendants committed an intentional tort by their willful, wanton and reckless actions. Although his Complaint does not specifically state what the intentional tort is, he alleges that he suffered mental and emotional anguish, which we interpret to mean that he is asserting a claim for the intentional infliction of emotional distress. He also outlines *1217 what he contends is the duty of the defendants, the breach of the duty, and the injury he has suffered as a result of a direct and proximate result of the defendants' actions, which are the elements of an action for negligence.
McFadden v. State, 542 So.2d 871 (Miss. 1989), considered the question of the immunity of prison officials. Under Mississippi law, the State and its agencies cannot be sued unless they consent to be sued. See Miss. Code Ann. § 11-46-6 (Supp. 1990). However, where persons working for the State have been named in a civil suit in their individual capacities, they are not given absolute immunity but only qualified immunity.
Qualified immunity acts to protect prison officials only when they were performing a discretionary function as opposed to a ministerial function. The distinction between the two is "that [if] the duty is one which has been positively imposed by law and in a manner or upon conditions which are specifically designated, the duty to perform under the condition specified, not being dependent upon the officer's judgment or discretion, the act and discharge thereof is ministerial." McFadden, 542 So.2d at 877.
Where prison officials have been sued for damages in a civil action, they will have no immunity if they have breached a legal duty causing injury and "(1) that duty is ministerial in nature, or (2) that duty involves the use of discretion and the governmental actor greatly or substantially exceeds his authority and in the course thereof causes harm, or (3) the governmental actor commits an intentional tort." Grantham v. Mississippi Department of Corrections, 522 So.2d 219, 225 (Miss. 1988).
An action for the intentional infliction of emotional distress occurs "[w]here there is something about the defendant's conduct which evokes outrage or revulsion, done intentionally  ... the results being reasonably foreseeable  ... even though there has been no physical injury." Sears, Roebuck & Co. v. Devers, 405 So.2d 898, 902 (Miss. 1981). In such an action, the damages awarded are dependent on the nature of the act rather than on the result.
McFadden has failed to allege conduct which is so outrageous that the defendants are liable for the intentional infliction of emotional distress. His claim of negligence must also fail since the duties involved in this action are discretionary in nature. Summary judgment was proper on these issues.
AFFIRMED AS TO SUMMARY JUDGMENT ON THE ISSUES OF VISITATION AND TORT LIABILITY; REVERSED AND REMANDED AS TO SUMMARY JUDGMENT ON HE ISSUES OF TRANSFERRAL FROM ONE PRISON FACILITY TO ANOTHER AND JOB REASSIGNMENT.
AFFIRMED IN PART; REVERSED AND REMANDED IN PART.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, ROBERTSON, PITTMAN, BANKS and McRAE, JJ., concur.