**William VAN POYCK, Plaintiff,**

v.

**Richard L. DUGGER, T.L. Barton and Tom Bigham, Defendants.**

No. 89–586–Civ–J–16.

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 8, 1991.

**572**

Randall Challen Berg, Jr., Florida Justice Institute, Inc., Miami, Fla., for plaintiff.

Joe Belitzky, Dept. of Legal Affairs, Tallahassee, Fla., for defendants.

## ORDER

JOHN H. MOORE, II, District Judge.

Plaintiff, an inmate of the Florida penal system, initiated this action by filing a *pro se* civil rights complaint pursuant to 42 U.S.C. § 1983 on July 14, 1989. Plaintiff is now represented by counsel. Defendants Richard L. Dugger, Tom Barton and Tom Bigham filed a Motion to Dismiss on October 26, 1989. Plaintiff filed a response on November 8, 1989. On May 22, 1990, the Court construed the motion to be a motion for summary judgment as well and provided Plaintiff with the appropriate warnings. Plaintiff filed proper responses on June 6, 1990, and June 26, 1991. Further supporting documents were filed by Plaintiff on June 28, 1991, July 31, 1991, and August 8, 1991.

Summary judgment should be entered only if "there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *Warrior Tombigbee Transportation Co. v. M/V Nan Fung*, 695 F.2d 1294, 1296 (11th Cir.1983) (quoting rule). "The party seeking summary judgment bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case." *Id.* "In assessing whether the movant has met this burden, the courts should view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion." *Id.* (quoting *Clemons v. Dougherty County, Georgia*, 684 F.2d 1365, 1368 (11th Cir.1982)). *See also Thrasher v. State Farm Fire & Casualty Co.*, 734 F.2d 637 (11th Cir.1984).

■ If any factual issues are present in the records, the Court must **deny** the motion and proceed to trial. 684 F.2d at 1369. Moreover, summary judgment should be denied when some of the alleged incidents on which Plaintiff relies involve disputed issues of fact, while others raise legal issues that must be decided on a more developed record. *Pyles v. Carlson*, 698 F.2d 1131, 1133 (11th Cir.1983).

■ Further, it is clear that "[w]here an issue as to a material fact cannot be resolved without observation of the demeanor of witnesses in order to evaluate their credibility, summary judgment is not appropriate." 12 C. Wright & A. Miller, *Federal Practice and Procedure*, Advisory Committee Note to the 1963 Amendments to Rule 56, Appendix at 500 (1973). And, "[w]here the evidentiary matter in support of the motion does not establish the absence of a genuine issue, summary judgment must be denied even if no opposing evidentiary matter is presented." *Id.*

■ Summary judgment may not be invoked where the record reflects conflicting versions of material facts which require credibility determinations. *See Perry v. Thompson*, 786 F.2d 1093 (11th Cir.1986); *Leslie v. Ingram*, 786 F.2d 1533 (11th Cir. 1986).

Plaintiff claims he has been denied his first amendment rights of freedom of association, his fourteenth amendment right to due process of law (substantive and procedural) and his fourteenth amendment right to equal protection of the law. Plaintiff's Complaint at 4. Specifically, Plaintiff alleges he arrived at Florida State Prison on December 28, 1988, classified as a death row inmate. On that date, he requested

that his fiancee, Deborah Chisholm, be placed on his visitors list. The classification officer sent Ms. Chisholm a questionnaire to be completed and returned to the Department of Corrections. Ms. Chisholm complied with this requirement.

Ms. Chisholm is a nurse who was employed at Winter Haven Hospital at the time the complaint was filed. For a period of six months in 1988, she had been a contract nurse at Palm Beach County Jail. During that time period, she met the Plaintiff. Ms. Chisholm has no prior arrest record and she was considered to be a dependable and responsible employee of Winter Haven Hospital.

After three months, Plaintiff wrote an Inmate Request to Defendant Bigham to determine the reason for delay in approving Ms. Chisholm for visitation. Plaintiff was advised that Defendant Bigham was awaiting additional information. On May 1, 1989, Plaintiff filed his second Inmate Request concerning Ms. Chisholm. Mr. Bigham responded by referring to his May 2, 1989, reply letter to Ms. Chisholm. Therein he stated in pertinent part:

With your familiarity and knowledge of the security and interworkings of a penal facility, which you would have obtained in your employment with the Palm Beach County Jail, it is felt that you would be a security risk if approved to visit Inmate Van Poyck. Therefore, your request is denied.

Plaintiff's Exhibit 4, attached to the Complaint.

Plaintiff filed a Request for Administrative Remedy or Appeal to the Assistant Superintendent which was denied, and he filed an Appeal to the Secretary of the Florida Department of Corrections, which was also denied. Plaintiff's Exhibits 5, 6, attached to the Complaint.

Plaintiff contends he is already required to utilize the maximum security visiting park so the security reason given to deny Ms. Chisholm visitation is merely a pretext for retaliating against Plaintiff because of his offense of felony murder of a correctional officer and because of his acts as a certified legal aid. Plaintiff suggests there is a conspiracy to punish him.

## FIRST AMENDMENT

■ Defendants assert Plaintiff's first amendment claim must fail because there is no right to visitation for incarcerated persons. It is true there is no *absolute right* to visitation; however, the Eleventh Circuit has stated:

A convicted prisoner has no absolute constitutional right to visitation, such privilege being subject to the discretion of prison authorities, provided the visitation policies of the prison meet legitimate penological objectives. *Lynott v. Henderson*, 610 F.2d 340, 342 (5th Cir. 1980); *McCray v. Sullivan*, 509 F.2d 1332, 1334 (5th Cir.), *cert. denied*, 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975).

*Evans v. Johnson*, 808 F.2d 1427, 1428 (11th Cir.1987). *See Thorne v. Jones*, 765 F.2d 1270, 1274 (5th Cir.1985). To the extent Plaintiff has claimed an *absolute right* to visitation under the first amendment, Defendants' Motion to Dismiss will be GRANTED.

## DUE PROCESS

■ It is clear "[t]he denial of prison access to a particular visitor 'is well within the terms of confinement ordinarily contemplated by a prison sentence,' *Hewitt v. Helms*, 459 U.S. [460] at 468 [103 S.Ct. 864, 869, 74 L.Ed.2d 675] [ (1983) ], and therefore is not independently protected by the Due Process Clause." *Kentucky Department of Corrections v. Thompson*, 490 U.S. 454, 461, 109 S.Ct. 1904, 1909, 104 L.Ed.2d 506 (1989).

■ Of course, protected liberty interests may arise from the Due Process Clause itself or the laws of the States. *Id.* 490 U.S. at 460, 109 S.Ct. at 1908 (citation omitted). Plaintiff contends Florida created enforceable liberty interests in the Florida Administrative Code, Chapters 33–

5.006 [1] and 33–5.007 [2], which includes "standards or criteria that guide the exercise of

## 1. 33–5.006 Inmate's Visitors List.

(1) Upon being committed to the custody of the Department, each inmate shall be given the opportunity to submit a list of persons from whom he wishes to receive visits. The initial list, submitted before the inmate has been classified and assigned to a permanent institution, shall be limited to members of the inmate's immediate family, including spouse, children, parents, brothers, sisters, grandparents and grandchildren. Once the inmate has been assigned to a permanent institution, additional relatives and friends, business associates and others may be considered, but only after a criminal history background inquiry has been made. This inquiry will begin with the visitor providing personal data on Form DC3–316, Visitor Information Form, which shall be taken to a local law enforcement agency by the visitor; the law enforcement agency will then run a criminal background check on the prospective visitor. Form DC3–316, Visitor Information Form, is hereby incorporated by reference. A copy of the form may be obtained from any institution or from the Office of Operations, Department of Corrections, 1311 Winewood Boulevard, Tallahassee, Florida 32399–2500. If forms are to be mailed, the request must be accompanied by a self-addressed stamped envelope. The effective date of this form is June 20, 1985.

(2) The initial list and all requests to add persons to the list shall be submitted in writing by the inmate to his assigned Classification Specialist. The name and address of each prospective visitor shall be given, along with a brief description of the relationship of the person to the inmate. Form DC3–317, Request for Addition to Inmate's Visitation List, shall be used by the inmate for this purpose. Form DC3–317 is hereby incorporated by reference. A copy of the form may be obtained from any institution or from the Office of Operations, Department of Corrections, 1311 Winewood Boulevard, Tallahassee, Florida 32399–2500. If forms are to be mailed, the request must be accompanied by a self-addressed stamped envelope. The effective date of this form is June 20, 1985.

(3) The inmate's visitors list shall be compiled from names submitted by the inmate and approved for visiting by the inmate's classification specialist with review by the Classification Supervisor. Upon compiling an approved visitors list, the institution shall notify the inmate. The inmate is responsible for notifying persons on the list of their acceptance and for informing them of the basic visitation regulations, including the hours of permissible visitation.

(4) No person may be approved for inclusion in an inmate's visitors list if that person is considered to have a harmful effect on the inmate's rehabilitation or is found to be a threat to the security of the institution.

(5) Any person may be excluded from an inmate's visitors list for any of the reasons set forth in Section 33–5.007(2) for denying a visit. Disapproval of the requested visitors will be documented in the inmate's record, along with the reason for disapproval.

(6) Any person may be excluded from an inmate's visitors list if he has been convicted of a felony, but exclusion on this ground shall not be automatic. The nature and extent of the person's criminal record and the recentness of the offenses shall be weighed against the value of the relationship to the inmate.

(7) Inmate visits with approved family members or friends should be encouraged for the positive purposes of maintaining home and community ties, which after release should provide a deterrent to recidivism. To the extent that it is safe and practicable to do so, such visiting should be allowed to take place in a relaxed atmosphere.

(8) Inmates not married may be allowed to have one single non-immediate family member of the opposite sex on the visiting list, after approval. A married inmate may be allowed to have one single, non-family member of the opposite sex on the visiting list, after approval, if a pending divorce or separation of long duration can be verified and the spouse is removed from the list. Specific Authority 20.315, 944.09, 944.23, FS. Law Implemented 944.09, 944.23, FS. History—New 10-8-76, Previously numbered 33–5.06, Amended 10-6-83, 6-20-85, 3-12-86, Defendants' Exhibit A, filed October 26, 1989.

## 2. 33–5.007 Visitation Denial.

(1) Notwithstanding other provisions of this Chapter, any visit may be denied if it would present a clear and present danger to the security and order of the institution, if emergency situations exist or both.

(2) Permission for any person to visit may be denied:

(a) if that person

1. has introduced or attempted to introduce contraband into any correctional facility,

2. has assisted or attempted to assist an escape or escape attempt from any correctional facility, or

3. has committed serious or repeated violations of Department or institution regulations during previous visits, or

(b) if either the inmate or the prospective visitor has given false information or has attempted to conceal the identity of the prospective visitor in order to obtain visiting privileges.

(3) No visit should be denied:

(a) because of the race, creed, color or national origin of the inmate or visitor,

(b) because of the ideas or opinions held or expressed by the inmate or visitor, provided

discretion." Plaintiff's Response and Memorandum of Law in Opposition to Defendants' Motion to Dismiss, filed November 8, 1989, at 10.

The Supreme Court has concluded that the language of the state laws must be closely examined to determine whether state-created liberty interests are entitled to due process protection:

Stated simply, "a State creates a protected liberty interest by placing substantive limitations on official discretion." *Olim v. Wakinekona,* 461 U.S. [238], at 249 [103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983)]. A State may do this in a number of ways. Neither the drafting of regulations nor their interpretation can be reduced to an exact science. Our past decisions suggest, however, that the most common manner in which a State creates a liberty interest is by establishing "substantive predicates" to govern official decision-making, *Hewitt v. Helms,* 459 U.S., at 472 [103 S.Ct. at 871], and, further, by mandating the outcome to be reached upon a finding that the relevant criteria have been met.

Most of our procedural due process cases in the prison context have turned on the presence or absence of language creating "substantive predicates" to guide discretion. For example, the failure of a Connecticut statute governing commutation of sentences to provide "particularized standards or criteria [to] guide the State's decisionmakers," *Connecticut Board of Pardons v. Dumschat,* 452 U.S. [458], at 467 [101 S.Ct.

2460, 2465, 69 L.Ed.2d 158 (1981)] (Brennan, J., concurring), defeated an inmate's claim that the State had created a liberty interest. *Id.* [452 U.S.], at 465 [101 S.Ct. at 2464] (majority opinion). *See also Olim v. Wakinekona,* 461 U.S. [238], at 249–250 [103 S.Ct. 1741, 1748, 75 L.Ed.2d 813 (1983)] (interstate prison transfer left to "completely unfettered" discretion of administrator); *Meachum v. Fano,* 427 U.S. [215], at 228 [96 S.Ct. 2532, 2540, 49 L.Ed.2d 451 (1976)] (intrastate prison transfer at discretion of officials); *Montanye v. Haymes,* 427 U.S. [236], at 243 [96 S.Ct. 2543, 2547, 49 L.Ed.2d 466 (1976)] (same). In other instances, we have found that prison regulations or statutes *do* provide decisionmaking criteria which serve to limit discretion. *See, e.g., Hewitt v. Helms,* 459 U.S., at 472 [103 S.Ct. at 871] (administrative segregation not proper absent particular substantive predicates); *Board of Pardons v. Allen,* 482 U.S. [369], at 381 [107 S.Ct. 2415, 2422, 96 L.Ed.2d 303 (1987)] (parole granted unless certain standards met, even though the decision is " 'necessarily subjective ... and predictive' ").

We have also articulated a requirement, implicit in our earlier decisions, that the regulations contain "explicitly mandatory language," *i.e.,* specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest. *See Hewitt v. Helms,* 459 U.S., at 471–

that a visit may be denied if the visitor has advocated violence or the violation of any law or rule, or

(c) for any reason unrelated to the security, order or rehabilitative objectives of the institution.

(4) Visits by members of the inmate's immediate family should be denied only on the basis of the prospective visitor's history of criminal convictions or rule violations, or on the basis of a real suspicion, supported by specific, objective facts, that the visit would result in or further criminal activity or rule violations.

(5) Visiting privileges can be suspended and visitors can be removed from the approved visiting list of an inmate for criminal activity, for a serious rule violation, for continuous infractions of visiting procedures, for security breaches, or a combination of the above. When an incident occurs, a report of the facts, with recommendations, will be prepared for the Superintendent's review. Based on the report, the Superintendent, or the Assistant Superintendent, Classification Supervisor or the next senior officer present in the chain of command in the absence of the Superintendent, will determine final action. The visitor will be notified of the decision in writing, by the institution, with a copy placed in the inmate's record. Specific Authority 20.315, 944.09, 944.23, FS. Law Implemented 944.09, 944.23, FS. History—New 10–8–76, Previously numbered 33–5.07, Amended 10–6–83, 6–20–85, 3–12–86,

Defendants' Exhibit B, filed October 26, 1989.

472 [103 S.Ct. at 871–72]. The regulations at issue in *Hewitt* mandated that certain procedures be followed, and "that administrative segregation will not occur absent specified substantive predicates." *Id.*, at 472 [103 S.Ct. at 871]. In *Board of Pardons v. Allen, supra,* the relevant statute "use[d] mandatory language ['shall'] to 'creat[e] a presumption that parole release will be granted' when the designated findings are made," 482 U.S., at 377–378 [107 S.Ct. at 2420–2421], quoting *Greenholtz v. Nebraska Penal Inmates,* 442 U.S. [1], at 12 [99 S.Ct. 2100, 2106, 60 L.Ed.2d 668 (1979)]. *See also Greenholtz* [442 U.S.], at 11 [99 S.Ct. at 2105] (statute providing that board "shall order" release unless one of four specified conditions is found). In sum, the use of "explicitly mandatory language," in connection with the establishment of "specific substantive predicates" to limit discretion, forces a conclusion that the State has created a liberty interest. *Hewitt v. Helms,* 459 U.S., at 472 [103 S.Ct. at 871].

490 U.S. at 462–463, 109 S.Ct. at 1909–10.

First, this Court will ask whether substantive predicates have been adopted in F.A.C. Chapters 33–5.006 and 33–5.007 which are meant to guide the "officer's discretion in making the ultimate decision." *Id.* at 464, 109 S.Ct. at 1911. The rules provide "no person may be approved" if "that person is considered to have a harmful effect on the inmate's rehabilitation or is found to be a threat to the security of the institution." *See* n. 1, *supra.* Additionally, visitors may be excluded if they are involved in the introduction or attempted introduction of contraband into the institution, if they assisted or attempted to assist in an escape from any institution, if they committed serious or repeated violations of the rules and regulations of the Department of Corrections, if they or the inmate gave false information in seeking visitation privileges, if they have been convicted of a felony, and if they "would present a clear and present danger to the security and order of the institution, if emergency situations exist or both." *See* n. 2, *supra.*

Moreover, the rules provide a visit *should not be denied* based on race, creed, color or national origin of parties, on the ideas or opinions of the parties (unless violence or violation of the rules is advocated), and on any reason unrelated to the security, order or rehabilitative goals of the prison. *Id.* Certainly these regulations contain standards to be utilized by the Classification Specialist and Classification Supervisor in determining the inmate's approved visitors list. Substantive predicates have been provided to guide discretion.

Next, this Court must ask whether the rules contain "explicitly mandatory language." This is a much more difficult question concerning these regulations. However, after comparing these regulations with those regulations reviewed in *Kentucky Department of Corrections v. Thompson,* this Court is convinced the relevant mandatory language is present. For example, "each inmate *shall* be given the opportunity to submit a list of persons from whom he wishes to receive visits." *See* n. 1 *supra.* Again, "[t]he inmate's visitors list *shall be compiled* from names submitted by the inmate and approved for visiting by the inmate's classification specialist with review by the Classification Supervisor." *Id.* Finally, "the institution *shall notify* the inmate," and "[d]isapproval of the requested visitors *will be documented* in the inmate record, along with the reason for disapproval." *Id.*

Most importantly, there is *no caveat* in these rules reserving the right of the classification staff to grant or deny visits for any reason or for no reason. *See* 490 U.S. at 464, 109 S.Ct. at 1911. There is no language in the rules suggesting unfettered discretion in the officials, such as "but not restricted to" or "but not limited to" the listed grounds for disapproval. *See* 490 U.S. at 456–457 nn. 1 and 2, 109 S.Ct. at 1906–1907 n.n. 1 and 2. Instead there is an exhaustive list of persons who may be excluded. The state has created a liberty interest by setting forth both specified substantive predicates and relevant mandatory language concerning denial of visitation. The inmates of the Florida Department of

Corrections can "reasonably form an objective expectation that a visit would necessarily be allowed absent the occurrence of one of the listed conditions." *Id.* at 465, 109 S.Ct. at 1911.

## RESPONDEAT SUPERIOR

■ In any § 1983 action, the initial inquiry must focus on whether the two essential elements to a § 1983 action are present:

> 1. whether the conduct complained of was committed by a person acting under color of state law; and
>
> 2. whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States.

*Parratt v. Taylor,* 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981); *Tillman v. Coley,* 886 F.2d 317, 319 (11th Cir.1989); *Barfield v. Brierton,* 883 F.2d 923, 934 (11th Cir.1989); *Cornelius v. Town of Highland Lake, Alabama,* 880 F.2d 348, 352 (11th Cir.1989). With regard to Defendant Dugger the second prong has not been met. Plaintiff did send a Request for Administrative Remedy or Appeal to the Secretary, Florida Department of. Corrections. Plaintiff's Exhibit 6, filed July 14, 1989. However, K.R. Snover responded to the appeal.

■ *Respondeat superior* has clearly been rejected as a theory of recovery under section 1983. *Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981); *Vasquez v. Snow,* 616 F.2d 217, 220 (5th Cir.1980); *Baskin v. Parker,* 602 F.2d 1205, 1208 (5th Cir.1979). Although personal participation is not specifically required for liability under section 1983, there must be some causal connection between the defendant named and the injury allegedly sustained. *Sims v. Adams,* 537 F.2d 829, 831 (5th Cir.1976). Plaintiff has not shown a causal connection. Accordingly, Defendants' Motion to Dismiss will be GRANTED with respect to Defendant Dugger, and Defendant Dugger will be DISMISSED from this action.

## QUALIFIED IMMUNITY

■ "Qualified immunity shields government officials executing discretionary responsibilities from civil damages 'insofar as their conduct does not violate *clearly established statutory* or *constitutional rights* of which a reasonable person would have known.' *Harlow v. Fitzgerald,* 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982) (emphasis added)." *Courson v. McMillian,* 939 F.2d 1479, 1486 (11th Cir.1991). The Defendants were, at the time applicable to the complaint, employees of the Florida Department of Corrections, and as such, government officials. They were all performing discretionary functions as employees of the state. *Id.* at 1487.

Upon review of the pre-existing law, the unlawfulness of denying an inmate visitation privileges without legitimate penological objectives was clearly established at the time of the actions challenged herein. *Evans v. Johnson,* 808 F.2d 1427 (11th Cir. 1987); *Lynott v. Henderson,* 610 F.2d 340, 342 (5th Cir.1980); *McCray v. Sullivan,* 509 F.2d 1332, 1334 (5th Cir.), *cert. denied,* 423 U.S. 859, 96 S.Ct. 114, 46 L.Ed.2d 86 (1975). The Court concludes, therefore, that the law was clearly established at the time Plaintiff was denied his request to have Ms. Chisholm on his visitors list, and Defendants are not entitled to qualified immunity.

## EQUAL PROTECTION; SUBSTANTIVE DUE PROCESS; CONSPIRACY

■ Plaintiff has not claimed to be a member of any "suspect class." Therefore, this Court must ask whether the decision to deny Deborah Chisholm visitor status is *rationally related* to a legitimate security interest. *See Thornton v. Hunt,* 852 F.2d 526, 527 (11th Cir.1988) (per curiam). Plaintiff's equal protection claim is intertwined with the conspiracy and substantive and procedural due process claims. There remains a genuine issue of material fact as to whether the Defendants denied Plaintiff the right to visit with Ms. Chisholm in retaliation for his offense of felony murder of a correctional officer and in re-

**578**

taliation for his actions as an inmate legal aid rather than to insure the safety and security of the institution. Defendants are not entitled to qualified immunity and their Motion to Dismiss will be DENIED on these claims.

Accordingly, it is now

ORDERED:

1. Defendants' Motion to Strike Affidavit of William Van Poyck (Doc. # 61), filed August 23, 1991, and Defendants' Motion to Strike Affidavit of Robert David Roy (Doc. # 62), filed August 23, 1991, are DENIED.

2. Defendants' Motion to Dismiss (Doc. # 10), (construed to be a motion for summary judgment), filed October 26, 1989, is GRANTED with respect to Plaintiff's First Amendment claim of an absolute right to visitation and with respect to Defendant Dugger.

3. Richard L. Dugger is hereby DISMISSED from this action.

4. In all other respects, Defendants' Motion to Dismiss is DENIED.

5. Defendants shall respond to the complaint within TWENTY (20) DAYS from the date of this order.

DONE AND ORDERED.