**John HERNANDEZ, Plaintiff–Appellant,**

v.

**Thomas A. COUGHLIN, III, Commissioner, New York Department of Corrections; Joseph Pranzenica, Family Service Coordinator; and Dean Riley, Superintendent Fishkill Correctional Facility, Defendants–Appellees.**

No. 623, Docket 92–2292.

United States Court of Appeals,
Second Circuit.

Argued Nov. 15, 1993.

Decided March 3, 1994.

134

Howard M. Erichson, Cleary, Gottlieb, Steen & Hamilton, New York, N.Y. (Thomas J. Moloney, Cleary, Gottlieb, Steen & Hamilton, New York, N.Y., of counsel), for Plaintiff–Appellant.

Clement J. Colucci, Assistant Attorney General, New York, N.Y. (Robert Abrams, Attorney General of the State of New York, New York, N.Y., of counsel), for Defendants-Appellees.

Before: ALTIMARI and WALKER, Circuit Judges, and OWEN, District Judge.*

ALTIMARI, Circuit Judge:

Plaintiff-appellant John Hernandez appeals from a judgment entered in the United States District Court for the Southern District of New York (Kram, *J.*), dismissing his complaint for failure to state a claim upon which relief can be granted pursuant to Fed. R.Civ.P. 12(b)(6). The complaint presents a claim for deprivation of constitutional rights under 42 U.S.C. § 1983. In the complaint, Hernandez alleges that defendants-appellees Thomas A. Coughlin, Commissioner New York Department of Corrections, Joseph Pranzenica, Family Service Coordinator, and Dean Riley, Superintendent Fishkill Correctional Facility, ("the Corrections Officials") denied him conjugal visitation rights, in violation of the Eighth Amendment prohibition of cruel and unusual punishment and the Fourteenth Amendment guarantee of due process. On appeal, Hernandez principally contends that the district court erred in dismissing his *pro se* complaint without considering the Corrections Officials' deprivation of his constitutional right to privacy in marital relations. Hernandez also claims that the dis-

---

* The Honorable Richard Owen, *Senior Judge*, United States District Court for the Southern District of New York, sitting by designation.

trict court erred in dismissing the complaint without granting leave to amend the complaint to allege that he was denied participation in a prison program in retaliation for his exercise of constitutionally protected rights.

For the reasons set forth below, we affirm the district court's judgment.

## BACKGROUND

Hernandez is an inmate in the New York State Correctional system who was convicted in 1980 in New York state court of robbery in the first degree. He was sentenced to serve eight and one-third to twenty-five years' imprisonment. At sentencing, Hernandez was classified as "Maximum Status," and was assigned to a maximum security facility. Hernandez subsequently served time at Attica, Clinton, Auburn, and Comstock Correctional Facilities, all of which are maximum security prisons. While incarcerated at Attica, Clinton, and Auburn, and while classified as "Maximum Status," Hernandez participated in a program known as the Family Reunion Program ("FRP") established at each of those facilities.

The FRP, which is governed by the New York Codes, Rules and Regulations ("NYCRR"), offers inmates extended private visits with their spouses and families. *See* N.Y.Comp.Codes R. & Regs. tit. 7, §§ 220.1–220.6 (1986). Generally, FRP visits take place overnight or over a weekend in a trailer within the prison facility. Hernandez participated in over thirty FRP visits while incarcerated at Attica, Clinton, and Auburn Correctional Facilities.

Hernandez was reclassified as "Medium Status" in 1986. Two years later, he was transferred to the Fishkill Correctional Facility, a medium security prison. Shortly thereafter, Hernandez applied for admission to Fishkill's FRP, filing all required papers and submitting to a medical examination. In January 1989, Hernandez was told that his application would be placed on hold pending medical clearance. He investigated the matter, and was informed that medical clearance had been granted on December 20, 1988. Hernandez wrote to defendant-appellee Pranzenica, the FRP coordinator, and sent him a copy of his medical clearance. Hernandez was subsequently notified on January 18, 1989 that his application for FRP had been denied based on the "nature of the instant offense."

In November 1990, Hernandez commenced an action *pro se* and proceeded *in forma pauperis* in the district court against the Corrections Officials pursuant to 42 U.S.C. § 1983, seeking restoration of FRP visitation, damages, and other relief. The complaint alleged that the Corrections Officials denied him conjugal visitation rights in violation of the Eighth Amendment prohibition of cruel and unusual punishment and the Fourteenth Amendment's Due Process Clause.

The parties consented, under 28 U.S.C. § 636(c), to conduct all proceedings before Magistrate Judge Kathleen A. Roberts. On December 13, 1991, the Corrections Officials moved to dismiss the complaint for failure to state a claim upon which relief can be granted, pursuant to Fed.R.Civ.P. 12(b)(6). Upon Hernandez's request, Magistrate Judge Roberts extended his time to respond to the motion, but Hernandez made no response.

In a Memorandum and Order filed March 4, 1992, Magistrate Judge Roberts granted the Corrections Officials' motion and dismissed the complaint, concluding that Hernandez's claim did not implicate any constitutionally protected interest or any property or liberty interest created by state law. The district court adopted the findings and holdings of Magistrate Judge Roberts, ordered the action discontinued, and entered judgment on March 23, 1992.

Following this decision, on April 23, 1992, Hernandez filed a motion for an extension of time to file a notice of appeal. The district court treated the motion as a timely notice of appeal. Thereafter, on April 29, 1992, Hernandez submitted to the district court a motion for leave to file an amended complaint, attempting to add an allegation that the Corrections Officials retaliated against him for his initial complaint and for sending the court numerous letters written by him and his family to members of Congress, corrections officials, and other state and city officials. The motion was removed from the docket

because Hernandez was deemed to have already filed a notice of appeal, thereby transferring jurisdiction to this Court. On July 14, 1992, we dismissed the appeal for failure to comply with the scheduling order. Hernandez moved to reinstate the appeal and for appointment of counsel. The Court granted the motion on May 19, 1993.

Hernandez has since been transferred from Fishkill, and as of September 20, 1993, he is confined at the Mid–Orange Correctional Facility, a medium security prison.

## DISCUSSION

 We review the grant of a motion to dismiss for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(6) *de novo.* *See Grimes v. Ohio Edison Co.,* 992 F.2d 455, 456 (2d Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993). In reviewing a complaint for dismissal under Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true and construe all reasonable inferences in the plaintiff's favor. *See Allen v. Westpoint–Pepperell, Inc.,* 945 F.2d 40, 44 (2d Cir.1991). The complaint may be dismissed only where "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" *Id.* (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957)). This standard is applied with even greater force where the plaintiff alleges civil rights violations or where the complaint is submitted *pro se. See Easton v. Sundram,* 947 F.2d 1011, 1015 (2d Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1943, 118 L.Ed.2d 548 (1992).

### (1) *Right to Marital Privacy*

On appeal, Hernandez contests the district court's dismissal of his complaint and claims that the district court erred in finding that he had not stated a cognizable constitutional claim. Hernandez contends that the denial of conjugal visits deprived him of a liberty interest without due process of law. He bases this contention on the premise that there exists a fundamental right to marital privacy and conjugal visits while incarcerated. We disagree.

In *Kentucky Department of Corrections v. Thompson,* the Supreme Court outlined two steps for the examination of procedural due process claims: "the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989) (citations omitted).

 As a threshold matter, we must determine whether Hernandez has a protected liberty interest in the right to marital privacy while imprisoned. Protected liberty interests emanate from either the Due Process Clause or the laws of the States. *See id.* We therefore must decide whether the alleged right to marital privacy while incarcerated arises from either the Due Process Clause or the laws of New York state.

### (A) *Due Process Clause*

 Hernandez claims a constitutionally protected right to conjugal visits in prison. He argues that a guaranteed right to marital intimacy is derived from the fundamental rights of marriage and procreation. Hernandez's understanding of these two rights is misguided.

 Prison inmates do not shed all fundamental protections of the Constitution at the prison gates. *See Turner v. Safley,* 482 U.S. 78, 95, 107 S.Ct. 2254, 2265, 96 L.Ed.2d 64 (1987). Indeed, many constitutional guarantees survive incarceration, *see id.,* although such protections are restricted by valid penological objectives, *see O'Lone v. Estate of Shabazz,* 482 U.S. 342, 348, 107 S.Ct. 2400, 2404, 96 L.Ed.2d 282 (1987) (noting deterrence of crime, rehabilitation of prisoners, and institutional security limit constitutional rights). Although it is clear that prisoners have a fundamental right to marry, this constitutionally protected guarantee is substantially limited as a result of incarceration. *See Turner,* 482 U.S. at 95, 107 S.Ct. at 2265. Similarly, inmates possess the right to maintain their procreative abilities for later use once released from custody, even though this right is restricted. *See Skinner v. Okla-*

*homa,* 316 U.S. 535, 541, 62 S.Ct. 1110, 1113, 86 L.Ed. 1655 (1942) (overturning Oklahoma law providing for compulsory sterilization as punishment for repeat offenders of certain crimes on equal protection grounds).

The Constitution, however, does not create any protected guarantee to conjugal visitation privileges while incarcerated. *See Turner,* 482 U.S. at 95–96, 107 S.Ct. at 2265. The Supreme Court in *Turner* held that the right of marriage survives incarceration, but the Court also noted that the consummation of marriage would take place after release from confinement. *Id.* Accordingly, even though the right to marriage is constitutionally protected for inmates, the right to marital privacy and conjugal visits while incarcerated is not.

Rights of marital privacy, like the right to marry and procreate, are necessarily and substantially abridged in a prison setting. *See id.* The exigencies and operational considerations of our penal system, *see, e.g., Jones v. North Carolina Prisoners' Labor Union,* 433 U.S. 119, 125, 129–30, 97 S.Ct. 2532, 2537, 2539–40, 53 L.Ed.2d 629 (1977), preclude a prisoner from retaining a fundamental right to cohabitate with his or her spouse. Therefore, in order for Hernandez to succeed, he must prove that a protected liberty interest entitled to the guarantees of the Due Process Clause in the prison setting emanates from New York state law.

(B) *State Law*

■ Hernandez claims that because he had been permitted to participate in the FRP at Attica, Clinton, and Auburn Correctional Facilities, the Corrections Officials' denial of his application to participate in the FRP at Fishkill deprived him of a liberty interest without due process of law. Hernandez's claim is without merit.

■ State law may create protected liberty interests for prisoners, *see Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909, but only where our close examination of the relevant state statutes and regulations shows that the state has placed "substantive limitations on official discretion," *see Olim v. Wakinekona,* 461 U.S. 238, 249, 103 S.Ct. 1741, 1747, 75 L.Ed.2d 813 (1983). The relevant state law or regulation must require specific mandatory substantive predicates to govern administrative decisions and must "mandat[e] the outcome to be reached upon a finding that the relevant criteria have been met," *Thompson,* 490 U.S. at 462, 109 S.Ct. at 1909 (citation omitted).

In applying this standard to the New York regulations that establish the FRP, it is clear that these regulations contain no specific set of criteria that when met would make participation in the FRP mandatory, or that would significantly limit a prison official's discretion in deciding the best candidates for program participation. *See* N.Y.Comp.R. & Regs. tit. 7, §§ 220.1–220.6 (1986). Rather, the regulations provide corrections officials with discretionary authority to determine whether a particular visitor may be permitted to enter a correctional facility, whether a particular correctional facility should include a FRP, and whether a particular inmate should be given the privilege to participate. *Id.*

For example, the New York Correctional Law states that visitors shall not be permitted to enter a correctional facility "except by authority of the commissioner of correction under such regulations as the commissioner shall prescribe." N.Y.Correct.Law § 146 (McKinney 1987). The NYCRR provides that "[a]ny inmate has the right to make application for participation in the Family Reunion Program, *if* their facility of residence offers the program. Eligibility is to be determined *during processing,* not prior thereto." N.Y.Comp.R. & Regs. tit. 7, §§ 220.2 (1986) (emphasis added). Furthermore, successful participation at one facility that offers the FRP does not necessarily guarantee the right to participate at another correctional facility. *See* N.Y.Comp.R. & Regs. tit. 7, § 220.3(a)(1) (1986) (noting that "[a]n inmate who has successfully participated in the program at one facility and is transferred to another facility where the program is offered *may* apply for participation") (emphasis added).

In light of the New York regulations, Hernandez has no basis to claim to be the beneficiary of a state-created liberty interest in the participation in the FRP. The fact that New

**138**

York State's penal system has allowed for inmates to take part in conjugal visits with their spouses in no way establishes a constitutional right of marital intimacy for those privileges. The evaluation of whether or not that opportunity should be granted to a prisoner once he is in a facility that has developed such a program is "committed to the considered judgment of prison administrators, 'who are actually charged with and trained in the running of the particular institution under examination.'" *O'Lone,* 482 U.S. at 349, 107 S.Ct. at 2404 (quoting *Bell v. Wolfish,* 441 U.S. 520, 562, 99 S.Ct. 1861, 1886, 60 L.Ed.2d 447 (1979)). Accordingly, there is no liberty interest entitled to the guarantees of the Due Process Clause created from state law.

Because we find that no state-created liberty interest has been interfered with, we need not consider what process is due under the Fourteenth Amendment.

(2) *Denial of Leave to Amend the Complaint*

■ Hernandez contends that the district court erred in dismissing the complaint without granting leave to amend the complaint to include a charge of retaliation. The denial of leave to amend the complaint is within the discretion of the district court. *See Zenith Radio Corp. v. Hazeltine Research, Inc.,* 401 U.S. 321, 330, 91 S.Ct. 795, 802, 28 L.Ed.2d 77 (1971); *Oreck Corp. v. Whirlpool Corp.,* 639 F.2d 75, 81 (1980), *cert. denied,* 454 U.S. 1083, 102 S.Ct. 639, 70 L.Ed.2d 618 (1981). Once a timely notice of appeal has been made to this Court, however, the district court lacks the jurisdiction to consider such an amendment. *See Denny v. Barber,* 576 F.2d 465, 468 (2d Cir.1978); *Segal v. Gordon,* 467 F.2d 602, 608 n. 12 (2d Cir.1972).

When Hernandez filed a motion for an extension of time to file a notice of appeal in the instant case, the district court viewed the motion as a timely notice of appeal. Once Hernandez was deemed to have filed a notice of appeal, jurisdiction was transferred to this Court. His subsequent motion to file an amended complaint was therefore precluded because the district court was without jurisdiction to permit the amendment. Under these circumstances, the district court did not abuse its discretion by the dismissal of the complaint without leave to amend.

CONCLUSION

Based on the foregoing, we affirm the judgment of the district court, dismissing Hernandez's complaint pursuant to Fed. R.Civ.P. 12(b)(6) without leave to amend the complaint to include a charge of retaliation. We note that we have reviewed only Hernandez's claim of a constitutional right to marital intimacy, but have not addressed the merits of his claim of retaliation, which occurred subsequent to the administrative decision to deny his participation in the FRP. This decision does not preclude Hernandez, if he so chooses, from filing an original claim pursuant to 42 U.S.C. § 1983 for relief for the alleged retaliation by the Correction Officials for his addressing public officials concerning his grievances.