**William GERBER, Plaintiff,**

v.

**Warden Rodney HICKMAN, Defendant.**

**No. Civ. S991315 FCD JFM P.**

United States District Court,
E.D. California.

June 23, 2000.

Kenneth Lloyd Rosenfeld, Law Offices of Kenneth L. Ssenfeld, Elk Grove, CA, Teresa Levy Zuber, Law Offices of Teresa L. Zuber, Sacramento, CA, for plaintiff.

Robert R. Anderson, Gregory S. Walston, Attorney General's Office of State of California, Sacramento, CA, for defendant.

## AMENDED MEMORANDUM AND ORDER

DAMRELL, District Judge.

Plaintiff William Gerber, a state prisoner, brings this civil rights action pursuant to 42 U.S.C. § 1983 alleging that defendant Rodney Hickman, Acting Warden of Mule Creek State Prison, violated his constitutional right to procreate by refusing to allow him to artificially inseminate his wife. Plaintiff also contends that defendant's refusal violated his rights under Cal.Penal Code §§ 2600 and 2601. Defendant moves to dismiss, or in the alternative for summary judgment of, plaintiff's claims.

This matter was referred to a United States Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and Local General Order No. 262. On March 7, 2000, the magistrate judge filed findings and recommendations which were served on all parties and which contained notice to all parties that any objections to the findings and recommendations were to be filed within ten days. Defendant has filed objections, and plaintiff has filed a response thereto.

In accordance with the provisions of 28 U.S.C. § 636(b)(1)(C) and Local Rule 72–304, this court has conducted a *de novo* review of this case. Having carefully reviewed the entire file, the court rejects the findings and recommendations of the magistrate judge, and grants defendant's motion to dismiss.

### STANDARD

A complaint will not be dismissed under Fed.R.Civ.P. 12(b)(6) "unless it appears beyond doubt that plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Yamaguchi v. U.S. Department of Air Force*, 109 F.3d 1475, 1480 (9th Cir.1997) (quoting *Lewis v. Telephone Employees Credit Union*, 87 F.3d 1537, 1545 (9th Cir.1996)). "All allegations of material fact are taken as true and construed in the light most favorable to the nonmoving party." *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337–38 (9th Cir.1996).

### BACKGROUND

Plaintiff, a forty-one year old man, is an inmate at Mule Creek State Prison serving a sentence of 100 years to life plus eleven years. Plaintiff's wife, Evelyn Gerber, is forty-four years old. Plaintiff and his wife want to have a baby. The California Department of Corrections ("CDC") prohibits family visits for inmates "sentenced to life without the possibility of parole [or] sentenced to life, without a parole date established by the Board of Prison Terms." Cal.Code Regs. tit. 15 § 3174(e)(2). No parole date has been set for plaintiff, and according to plaintiff, due to the length of his sentence, no parole date seems likely. Accordingly, he wishes to artificially inseminate his wife. To accomplish this, plaintiff requests that (1) a laboratory be permitted to mail him a plastic collection container at the prison along with a prepaid return mailer, (2) he be permitted to ejaculate into the container, and (3) the filled container be returned to the laboratory in the prepaid mailer by overnight mail. Alternatively, plaintiff requests that his counsel be permitted to personally pick up the container for transfer to the laboratory or health care provider. Plaintiff represents that he and his wife will bear all of the costs associated therewith, including any costs incurred by the CDC. Defendant refuses to accommodate plaintiff's request.

### ANALYSIS

■■■ Plaintiff contends that defendant violated his constitutional and statutory right to procreate by refusing to allow him to artificially inseminate his wife. The right to procreate is a fundamental right. *Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992). Not all rights, however, survive incarceration, and even those that do are subject to significant restrictions. *See, e.g., Turner v. Safley*, 482 U.S. 78, 95–96, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). Defendant moves to dismiss plaintiff's complaint on the ground that there is no constitutional or statutory right to artificial insemination while incarcerated.

■■■ A "prison inmate 'retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system.' " *Id.* at 95, 107 S.Ct. 2254 (quoting *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974)). In *Turner*, the Supreme Court held that the right to marry survives incarceration. Although prisoners have a fundamental right to marry, this constitutionally protected guarantee is substantially limited as a result of incarceration. *See id.* at 95, 107 S.Ct. 2254. Significantly, the Constitution does not create any protected guarantee to conjugal visitation privileges while incarcerated. *See, e.g., Hernandez v. Coughlin*, 18 F.3d 133, 137 (2d Cir.1994). Nor does it create, for the reasons set forth below, a right to a means of procreation—in this case, artificial insemination.

In *Anderson v. Vasquez*, plaintiff asserted a right to artificial insemination while in prison. The district court rejected plaintiff's assertion, holding that there is "no

constitutional right to have an inmate's sperm preserved for artificial insemination [ ]." 827 F.Supp. 617, 620 (N.D.Cal.1992) (citing *Goodwin v. Turner,* 702 F.Supp. 1452, 1455 (D.Mo.1988)). The plaintiff argued that such a right derived from the fundamental right to procreate. The district court rejected plaintiff's assertion "because the existence of any such right does not survive incarceration." *Id.* The court reasoned that "many aspects of marriage that make it a basic civil right, such as cohabitation, sexual intercourse, and the bearing and rearing of children, are superseded by the fact of confinement. Artificial insemination as a method of begetting a child, falls within this realm of unavailable 'incidents of marriage.' " *Id.* at 621 (quoting *Goodwin,* 702 F.Supp. at 1454). Accordingly, the court held that the right to artificial insemination is "fundamentally inconsistent with imprisonment itself." *Id.* (quoting *Goodwin,* 702 F.Supp. at 1454) (quoting *Hudson v. Palmer,* 468 U.S. 517, 522–23, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)).[1]

Similarly, in *Goodwin,* the district court found that "regardless of the right petitioner has asserted, whether a right to privacy, a right to be free of cruel and unusual punishment, or a due process right, he does not have a fundamental constitutional right to father a child through artificial insemination." 702 F.Supp. at 1453. The court's decision "is governed by [its] impression that the existence of a 'right' such as here asserted is 'fundamentally inconsistent with imprisonment itself.' " *Id.* at 1454 (quoting *Hudson,* 468 U.S. at 523, 104 S.Ct. 3194). The

court distinguished the right to procreate outlined in *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942), which involved forced sterilization of prisoners, on the ground that "*Skinner* involved a permanent deprivation of the means to procreate, rather than a mere delay as in petitioner's case." *Id.* The court also rejected the plaintiff's assertion that the claimed right was a necessary corollary of the right to marry, reasoning that the Supreme Court impliedly rejected such an assertion in *Turner* when it noted that "[m]ost inmate marriages are formed in the expectation that they ultimately will be fully consummated." *Id.* The court noted that although certain marital rights survive incarceration, many basic rights associated with marriage do not, including the right to cohabitation, sexual intercourse, and artificial insemination as a method of begetting a child. *Id.* Finally, the court rejected plaintiff's assertion that his right was protected under his right to privacy. The court explained that:

> [A]ny privacy interest petitioner might allege in becoming a parent through artificial insemination is necessarily infringed upon by the nature of incarceration, and must be circumscribed.... Whatever privacy interest an inmate might have, nowhere does it appear that such interest imposes an affirmative duty on the government, whether it be to provide facilities for conjugal visits or the means to assist in artificial insemination.

*Id.* at 1455.[2]

The court finds the reasoning of the district courts in *Goodwin* and *Anderson*

---

1. On review, the Ninth Circuit found that this issue was not ripe because plaintiff's complaint failed to allege that a specific request for artificial insemination had been made. Accordingly, the Ninth Circuit reversed that portion of the district court's decision dismissing plaintiff's claim with prejudice, and instructed the court to dismiss it without prejudice. *See Anderson v. Vasquez,* 1994 WL 362699 at *3–4 (9th Cir. July 13, 1994). This court does not cite to the district court's decision as authority, but rather because it finds the court's reasoning compelling.

2. On appeal, the Eighth Circuit held that it need not reach this issue, because "[e]ven assuming, without deciding, that the exercise of [the] right to procreate is not fundamentally inconsistent with [the petitioner's] status as a prisoner, the restriction imposed [on that right] is reasonably related to achieving its legitimate penological interest." *Goodwin v. Turner,* 908 F.2d 1395, 1398 (8th Cir.1990).

compelling. Whatever right plaintiff has to artificial insemination, it does not survive incarceration. As the Second Circuit observed in *Hernandez*, "inmates possess the right to maintain their procreative abilities for later use once released from custody, even though this right is restricted." 18 F.3d at 137 (citing *Skinner*, 316 U.S. at 541, 62 S.Ct. 1110).

Plaintiff argues that due to the length of his sentence and his wife's age, he will be unable to utilize his procreative abilities once released. Thus, according to plaintiff, defendant's refusal to accommodate his request is tantamount to forced sterilization. As the *Goodwin* court recognized, "[t]he [Bureau of Prisons] neither is nor should be responsible for guaranteeing a procreative opportunity." *Id.* (citing generally *Poe v. Gerstein*, 517 F.2d 787, 796 (5th Cir.1975)). The court agrees with *Goodwin*, that "[t]here is simply no comparison between sterilization, ... and the denial of the facilitation of artificial insemination." *Id.*

■ In addition to the above, plaintiff argues that defendant's refusal to accommodate his request violates his equal protection rights. First, plaintiff contends that the CDC routinely treats male and female defendants differently with respect to their procreative rights. Plaintiff argues that because the CDC does not require female inmates to have an abortion if they are or become pregnant during incarceration, female inmates, unlike male inmates, have both the right to procreate and the right to make decisions about the same. Plaintiff's argument fails for two reasons. First, with respect to the decision as to whether to terminate a pregnancy, male and female inmates are not similarly situated because male inmates cannot become pregnant. To the extent male and female inmates are similarly-situated (sentenced to life without the possibility of parole or sentenced to life without a parole

date), neither are permitted conjugal visits nor a means to procreate in prison. Thus, they are treated the same.[3]

■ Second, plaintiff argues that defendant's refusal to accommodate his request violates his equal protection rights because it treats two classes of male offenders differently—those convicted before and those convicted after the "three strikes" law. According to plaintiff, an individual with an identical record but whose offense predated the "three strikes" law would have received only a five year enhancement, and thus, would have been afforded conjugal visits and/or would have been released in time to procreate outside of prison. Plaintiff is not similarly situated to those defendants whose crimes predate the "three-strikes" law. *See People v. Spears*, 40 Cal.App.4th 1683, 1688, 48 Cal.Rptr.2d 634 (1995) (holding that provision of "three strikes" statute limiting sentence credits available to defendant with prior violent or serious felony convictions did not violate equal protection despite fact that defendant with identical record whose offenses preceded enactment of "three strikes" legislation would receive less severe punishment).

> It is perfectly proper for the Legislature to create a new sentencing procedure which operates prospectively only. Despite the disparity created by rendering different sentences after an admittedly arbitrarily chosen date, prospective application of such a statute does not violate equal protection principles, because of the legitimate public purpose of assuring that penal laws will maintain their desired deterrent effect by carrying out the original prescribed punishment as written.

*Id.* (internal quotations and citation omitted) (quoting *People v. Gilchrist*, 133 Cal. App.3d 38, 45, 183 Cal.Rptr. 709 (1982)).

---

**3.** A more troubling and colorable equal protection argument would arise if the court were to recognize a constitutional right to procreate while incarcerated. Female inmates would then arguably have a corollary right to be inseminated. The court hastens to speculate as to the institutional and societal chaos which would result.

Fixing the day the offense was committed as the watershed results in an entirely reasonable classification and does not deny equal protection to those whose offenses predate [the legislative change].

*Spears,* 40 Cal.App.4th at 1688, 48 Cal. Rptr.2d 634 (quoting *People v. Superior Court,* 78 Cal.App.3d 134, 143, 144 Cal. Rptr. 89 (1978)).

For the reasons set forth above, the court holds that during incarceration a prisoner loses his or her right to access to a means of procreation, be it conjugal visits, artificial insemination, *in vitro* fertilization, etc.[4] Accordingly, plaintiff's claims brought pursuant to 42 U.S.C. § 1983 are dismissed.

█ Plaintiff also claims that defendant's failure to accommodate his request to artificially inseminate violated his rights guaranteed by Cal.Penal Code §§ 2600 and 2601. Section 2600 provides that "persons sentenced to imprisonment in state prison may during that period of confinement be deprived of such rights ... as is reasonably related to legitimate penological interests." "Reviewing a claim under section 2600 requires a three-step inquiry: (1) Are any 'rights' implicated? (2) If they are, does a 'reasonable security' problem exist which might permit a deprivation of rights under the statute? (3) If so, to what extent are deprivations of those rights 'necessary' to satisfy reasonable security interests." *In re Roark,* 48 Cal. App.4th 1946, 1951, 56 Cal.Rptr.2d 582 (1996) (quoting *In re Arias,* 42 Cal.3d 667, 689–690, 230 Cal.Rptr. 505, 725 P.2d 664 (1986)). Here, plaintiff fails the first test. As set forth above, plaintiff's asserted constitutional right does not survive incarceration. Section 2601 enumerates certain civil rights possessed by persons described in § 2600. The only arguably applicable right is the right to marry. As discussed above, plaintiff's right to marry is subject to numerous restrictions while plaintiff is incarcerated and does not include a right

to a means of procreation. Accordingly, plaintiff's claims brought pursuant to Cal.Penal Code §§ 2600 and 2601 are dismissed.

## CONCLUSION

Defendant's motion to dismiss is GRANTED. The clerk is hereby directed to close the file.

IT IS SO ORDERED.

---

4. Because the court finds that there is no right to artificial insemination in prison, the court need not determine whether defendant's refusal to accommodate plaintiff's request is reasonably related to legitimate penological interests.