William GERBER, Plaintiff–Appellant,

v.

Rodney HICKMAN,* WARDEN,
Defendant–Appellee.

No. 00–16494.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 13, 2000

Filed Sept. 5, 2001

* Defendant Roderick Hickman was erroneously named as Rodney Hickman.

Teresa L. Zuber, Sacramento, California, for the appellant.

Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Paul D. Gifford, Senior Deputy Attorney General, John M. Appelbaum, Supervising Deputy Attorney General, and Gregory S. Walston, Deputy Attorney General, Sacramento, California, for the appellee.

Before: BRIGHT,[**] REINHARDT, and SILVERMAN, Circuit Judges.

BRIGHT, Circuit Judge:

William Gerber, a prisoner incarcerated in the State of California, appeals from a judgment in the district court dismissing his complaint for failure to state a claim upon which relief can be granted pursuant to FED. R. CIV. P. 12(b)(6). The complaint presents a claim under 42 U.S.C. § 1983 for alleged violation of his substantive due process rights and under California state law for alleged violation of his statutory rights. In the complaint, Gerber alleges that the California Department of Corrections ("CDC") denied his fundamental right to procreate in violation of the Fourteenth Amendment guarantee of substantive due process. On appeal, Gerber principally contends that the district court erred in concluding that the right to procreate does not survive incarceration. The district court did not reach the question of whether the prison may restrict Gerber's exercise of that right in the manner in which he seeks to exercise it (i.e. by artificial insemination). We conclude that the right to procreate survives incarceration and that the factually unsupported arguments put forth by the Warden as legitimate penological reasons to restrict Gerber's exercise of his right to procreate are insufficient to justify dismissal of the complaint. Accordingly, we **REVERSE** and **VACATE** the dismissal and **REMAND** for further proceedings.

## I. BACKGROUND[1]

■ This case concerns a life-term prisoner's effort to have a child by artificially inseminating his wife. Artificial insemination is a noncoital process in which semen is collected from a man under laboratory conditions and then introduced into a woman's body with a needleless hypodermic syringe at a favorable time in her ovulation cycle. *See generally* Katheryn D. Katz, *The Clonal Child: Procreative Liberty and Asexual Reproduction,* 8 Alb. L.J. Sci. & Tech. 1, 23 (1997); Katheleen R. Guzman, *Property, Progeny, Body Part: Assisted Reproduction and the Transfer of Wealth,* 31 U.C. Davis L.Rev. 193, 202 (1997) (noting a conservative estimate that there have been more than 500,000 children conceived by artificial insemination in the United States).

Appellant William Gerber desires to artificially inseminate his wife because his particular circumstances disallow the "natural" method of procreation. Gerber was sentenced to 100 years to life imprisonment plus eleven years pursuant to California's three strikes law, Cal.Penal Code § 667, after his 1997 conviction for discharging a firearm and making terrorist threats. Prior to his conviction, he and his now forty-six-year-old wife wished to conceive a child. However, he is constrained in employing the usual methods for achieving this goal because he is a life-term prisoner incarcerated in California, and, under CDC regulations, conjugal visits are prohibited for inmates "sentenced to life without the possibility of parole [or] sentenced to life, without a parole date established by the Board of Prison Terms." CAL. CODE REGS. tit. 15, § 3174(e)(2). Given Gerber's sentence and his wife's age, he alleges that artificial insemination is the only method by which they can conceive a child together.

[**] The Honorable Myron H. Bright, Senior United States Circuit Judge for the Eighth Circuit, sitting by designation.

1. When we review an order dismissing a claim pursuant to a Rule 12(b)(6) motion, we must view the relevant facts in the light most favorable to the plaintiff. *Lee v. City of Los Angeles,* 250 F.3d 668, 679 (9th Cir.2001).

Gerber requested that prison authorities permit him to provide a semen specimen to a laboratory so that his wife may be artificially inseminated with it. According to Gerber, the University Andrology Laboratory and Sperm Bank at the University of Illinois at Chicago Medical Center would mail him a packet containing a plastic receptacle and a postage-paid return mailer. Then, Gerber would ejaculate into the receptacle, place it into the return mailer, and send it by overnight mail back to the laboratory. Gerber's privately retained lawyer offered to retrieve the return mailer directly from Gerber if prison authorities do not want Gerber to place it in the mail himself. Gerber does not object to the inspection of his return package in accordance with the prison's usual procedures. Furthermore, Gerber and his wife are willing to bear all of the costs necessary to facilitate the specimen collection, including paying for a licensed physician to come on the premises to oversee the procedure. The prison denied his request after determining that the procedure was not medically necessary and that Gerber as a prisoner had not shown that the CDC had violated any of his constitutional rights.

This case has a complicated procedural history. On July 8, 1999, following denial of his request and exhaustion of his administrative remedies, Gerber filed an application for a writ of habeas corpus, construed by the district court as a civil action alleging violation of Gerber's civil rights, against the Warden of the Mule Creek State Prison where he was incarcerated.[2] By order dated September 9, 1999, the district court dismissed Gerber's action with leave for Gerber to file an amended complaint alleging a violation of 42 U.S.C. § 1983.

On October 7, 1999, Gerber filed the amended complaint, naming Warden Rodney Hickman as the sole defendant and seeking injunctive relief. In the complaint, he alleged that the Warden's policy violated his constitutional right to procreate under the Due Process Clause of the Fourteenth Amendment and his statutory rights as a California prisoner guaranteed by CAL. PENAL CODE §§ 2600 and 2601. The parties consented, under 28 U.S.C. § 636(c), to conduct all proceedings before Magistrate Judge John F. Moulds. On January 5, 2000, the Warden moved to dismiss the complaint pursuant to FED. R. CIV. P. 12(b)(6), for failure to state a claim upon which relief can be granted, or, alternatively, for summary judgment, on the basis that the right to procreate does not survive incarceration and that, even if it did, the restriction on artificial insemination is reasonably related to the legitimate penological goals of treating male and female inmates equally to the extent possible, conserving prison resources, maintaining institutional security interests, and preserving inmates' rehabilitation.

The magistrate judge heard oral argument on the Warden's motion on March 2, 2000. On March 7, 2000, the magistrate judge filed findings and recommendations, recommending denial of the Warden's motion to dismiss and denial of both parties' motions for summary judgment without prejudice. The magistrate judge found that the Warden failed to establish as a matter of law that the right to procreate does not exist during incarceration, that an inquiry into both the practical aspects of restrictions that arise as a consequence of

2. During the pendency of this action Gerber was transferred to the California State Prison in Lancaster.

an individual's status as a prisoner and the legitimate penological objectives of the corrections system is best undertaken on a fully developed factual record and not on a motion to dismiss, and that Gerber made a substantial showing that numerous facts are disputed underlying the determination of legal issues, thus obviating summary judgment dismissal.

Subsequently, the district court rejected the magistrate judge's findings and recommendations and dismissed the complaint for failure to state a claim upon which relief can be granted. The district court made no ruling on the motion for summary judgment. On June 23, 2000, the district court filed an amended memorandum and order and entered judgment that same day. The district court concluded that:

> Whatever right plaintiff has to artificial insemination, it does not survive incarceration.

*Gerber v. Hickman*, 103 F.Supp.2d 1214, 1218 (E.D.Cal.2000). Gerber appealed.

## II. JURISDICTION AND STANDARD OF REVIEW

We have jurisdiction over the district court's judgment pursuant to 28 U.S.C. § 1291.

■ We review the district court's dismissal for failure to state a claim de novo. *Wright v. Riveland*, 219 F.3d 905, 912 (9th Cir.2000). "[A] complaint should not be dismissed unless it appears beyond a doubt that plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* (quoting *Steck-*

*man v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295 (9th Cir.1998)).

## III. DISCUSSION

### A. Section 1983 Claim

■ To successfully bring a claim under 42 U.S.C. § 1983, Gerber must establish that (1) the conduct complained of was committed by a person acting under color of state law, and (2) the conduct deprived [Gerber] of a constitutional right. *L.W. v. Grubbs*, 974 F.2d 119, 120 (9th Cir.1992).

The parties do not dispute that Defendant–Appellee Warden Hickman is a state actor. Our focus, therefore, must be on whether Warden Hickman deprived Mr. Gerber of a right or interest granted by the Constitution.

In urging this court to reverse the district court's dismissal, Gerber asserts that he set forth a violation of his substantive due process rights by the CDC and that the district court erred in its determination that the fundamental right to procreate does not survive incarceration.[3]

■ We must undertake a two step analysis to determine whether Gerber's substantive due process rights were violated. First, we must determine whether there is a fundamental right involved (in this case, the right to procreate) and whether that fundamental right is not "inconsistent with [Gerber's] status as a prisoner." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). Second, if we decide that the fundamental

3. The district court concludes in part that a prisoner does not have a fundamental right to artificial insemination. *Gerber*, 103 F.Supp.2d at 1218. The district court erred in its framing of the fundamental right involved in this case. The question of whether a prisoner retains a fundamental right to procreate while in prison is a different question than whether a constitutional right to artifi-

cial insemination exists and survives incarceration. The district court goes on to state that "during incarceration a prisoner loses his or her right to access to a means of procreation." *Id.* at 1219. We take this statement to mean that the district court concluded that the fundamental right to procreation is inconsistent with imprisonment and, thus, does not survive incarceration.

right at issue survives incarceration, we then ask whether there are legitimate penological interests which justify the prison's restriction of the exercise of that fundamental right. *See Turner v. Safley*, 482 U.S. 78, 96–97, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987).

The Supreme Court has recognized a fundamental constitutional right to procreate on several occasions. *Carey v. Population Servs. Int'l*, 431 U.S. 678, 684–85, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) ("It is clear that among the decisions that an individual may make without unjustified government interference are personal decisions 'relating to marriage ... [and] procreation.' ") (internal citations omitted); *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) ("The rights to conceive and to raise one's children have been deemed 'essential' ... [and] 'basic civil rights of man.' ") (internal citations omitted); *Skinner v. Oklahoma*, 316 U.S. 535, 541, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942) (stating that legislation deprived individuals "of a right which is basic to the perpetuation of a race—the right to have offspring"). The right to procreate has been recognized in a number of other cases outside the prison context.[4] The question raised in this case is whether this fundamental right survives incarceration; that is, whether the fundamental right of procreation exists for prisoners during their term of imprisonment.

■ We apply a distinct constitutional analysis to cases involving prisoner rights. Because "[n]o iron curtain separates" pris-

oners from the Constitution, *Hudson v. Palmer*, 468 U.S. 517, 523, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984) (internal citation omitted), a prisoner "retains those [constitutional] rights that are not inconsistent with his status as a prisoner or with the legitimate penological objectives of the corrections system." *Pell v. Procunier*, 417 U.S. 817, 822, 94 S.Ct. 2800, 41 L.Ed.2d 495 (1974). The Supreme Court has held that some constitutional rights survive incarceration. *See, e.g., O'Lone v. Estate of Shabazz*, 482 U.S. 342, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987) (affirming free exercise of religion retained during incarceration); *Bounds v. Smith*, 430 U.S. 817, 97 S.Ct. 1491, 52 L.Ed.2d 72 (1977) (affirming access to courts retained); *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976) (holding prisoners have right of protection against cruel and unusual punishment); *Wolff v. McDonnell*, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974) (holding prisoners have protections of due process clause); *Pell*, 417 U.S. 817, 94 S.Ct. 2800, 41 L.Ed.2d 495 (affirming right of free speech retained).

In this case, the district court determined that "during incarceration a prisoner loses his or her right to access to a means of procreation, be it conjugal visits, artificial insemination, *in vitro* fertilization, etc." *Gerber*, 103 F.Supp.2d at 1219. The district court cited two other district court opinions in support of this proposition. The cited cases, however, do not serve as binding precedent for our decision, nor do

---

4. *See Planned Parenthood v. Casey*, 505 U.S. 833, 851, 112 S.Ct. 2791, 120 L.Ed.2d 674 (1992) (concerning right to an abortion); *Carey v. Population Services Int'l*, 431 U.S. 678, 685, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977) (finding right of minors to have access to birth control); *Cohen v. Chesterfield County Sch. Bd.*, 414 U.S. 632, 640, 94 S.Ct. 791, 39 L.Ed.2d 52 (1974) (concerning right of school

teacher not to be fired for becoming pregnant); *Eisenstadt v. Baird*, 405 U.S. 438, 453, 92 S.Ct. 1029, 31 L.Ed.2d 349 (1972) (holding right of unmarried individuals to have access to birth control); *Stanley v. Illinois*, 405 U.S. 645, 651–52, 92 S.Ct. 1208, 31 L.Ed.2d 551 (1972) (concerning right of unmarried father to have custody of his child after death of child's mother).

we find them particularly probative.[5] Contrary to the district court's conclusion, we hold that the right to procreate does indeed survive incarceration.[6]

No case has directly addressed whether the right to procreate is a right that prisoners possess during their time in prison. There are a few cases, however, that shed light on the question. In *Turner v. Safley*, 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1978), the Supreme Court established that the right to marry survives incarceration. *Id.* at 96, 107 S.Ct. 2254. The Court stated that prisoner marriages are included within the fundamental right to marry and that, although certain aspects of marriage could not exist in a prison setting (e.g. cohabitation), sufficient attributes of marriage remained to conclude that the right to marry continues within the prison walls. *Id.* at 95–96, 107 S.Ct. 2254.

Although the Supreme Court has not yet decided whether the right to procreate survives incarceration, in *Skinner v. Oklahoma*, the Supreme Court stated that prisoners have a constitutional right to maintain their procreative abilities for use once released from custody.[7] *Skinner*, 316 U.S. at 536, 62 S.Ct. 1110. The Supreme Court struck down Oklahoma's Habitual Criminal Sterilization Act, legislation which authorized the sterilization of persons convicted three times of a felony involving moral turpitude. *Id.* at 541, 62 S.Ct. 1110 (invalidating statute on equal protection grounds). The Court stated that

> We are dealing here with legislation which involves one of the basic civil rights of man. Marriage and procreation are fundamental to the very existence and survival of the race. The power to sterilize, if exercised, may have subtle, far–reaching and devastating effects. In evil or reckless hands it can cause races or types which are inimical to the dominant group to wither and disappear. There is no redemption for the individual whom the law touches. Any experiment which the State conducts is to his irreparable injury.

*Id.* While *Skinner* stands for the proposition that a prisoner has a fundamental right to procreation *following* his incarceration and therefore his ability to procreate

---

**5.** *Anderson v. Vasquez*, 827 F.Supp. 617, 620 (N.D.Cal.1992), was reversed on appeal in an unpublished disposition by this court on the ground that the portion of the decision regarding the right to procreate in prison was not ripe for adjudication. In *Goodwin v. Turner*, 702 F.Supp. 1452, 1454 (W.D.Mo.1988), although the district court stated that the right did not survive incarceration, the Eighth Circuit on appeal assumed, but did not decide that, the right to procreate was consistent with the status of imprisonment. The court then affirmed on the basis that the regulation at issue was reasonably related to legitimate penological interests. *See Goodwin v. Turner*, 908 F.2d 1395, 1398 (8th Cir.1990).

**6.** The dissent is incorrect when it states that we conclude that a prisoner has a constitutional right "to mail his semen from prison so that his wife can be artificially inseminated" or "to procreate from prison via FedEx." We do no such thing. As we make clear, the general fundamental right to procreate, well-recognized by the federal courts, is the right we hold to survive incarceration, not a more narrow manifestation of that right involving a particular means of procreation. The narrower issue is one that can be answered only after a record is developed and an examination can be conducted of the penological reasons, if any, for prohibiting the particular conduct at issue.

**7.** In cases involving family and marital rights outside the prison context, *Skinner* has been cited as standing for the proposition that procreation is a fundamental right and that choices surrounding when and whether to have children are protected by the Constitution. *See, e.g., Carey*, 431 U.S. at 685, 97 S.Ct. 2010; *Cleveland Bd. of Educ.*, 414 U.S. at 639–40, 94 S.Ct. 791; *Eisenstadt*, 405 U.S. at 453, 92 S.Ct. 1029; *Stanley*, 405 U.S. at 651, 92 S.Ct. 1208.

may not be destroyed, the decision's emphasis on the fundamental notion of the right to procreate lends support to the idea that prisoners retain some form of procreative rights while in prison.

Taken together, *Turner* and *Skinner* suggest that the fundamental right of procreation may exist in some form while a prisoner is incarcerated, despite the fact that a prisoner necessarily will not be able to exercise that right in the same manner or to the same extent as he would if he were not incarcerated.[8] *Turner* stands as an example of how a right related to marriage and family may be exercised in prison despite a prisoner's inability to carry out the "typical" marriage while in prison. *Skinner* states that, at a minimum, a prisoner while in prison cannot be deprived of his ability to procreate upon release, which in turn tends to support the notion that a person's procreative rights survive while he is in prison. The specific question, however, whether the right of procreation is *temporarily* extinguished simply by virtue of the fact of incarceration is a matter of first impression for this circuit.[9] Indeed, no circuit court has yet answered that question.[10]

The issue of procreation while in prison has arisen in the context of prisoners' requests for conjugal visits. In *Hernandez v. Coughlin*, 18 F.3d 133 (2d Cir.1994), the Second Circuit held that "[t]he Constitu-

tion ... does not create any protected guarantee to conjugal visitation privileges while incarcerated." *Id.* at 137. However, the language in the opinion suggests that the court intended to reject the narrow right to conjugal visitation without denying the possibility that a broader right to procreate survives incarceration. The court stated that Hernandez argued for a "right to marital intimacy ... derived from the fundamental rights of marriage and procreation." *Id.* at 136. The court went on to state that "Hernandez's understanding of these two rights is misguided" and subsequently held that there was no protected right to conjugal visitation. *Id.*

. It is unclear how much of the *Hernandez* court's determination regarding the existence of the right to conjugal visits was intertwined with its consideration of penological concerns. The court stated: "Rights of marital privacy, like the right to marry and procreate, are necessarily and substantially abridged in a prison setting." *Id.* at 137. This language suggests, contrary to the district court's position, that the right to procreate survives incarceration but that the exercise of that right can be restricted for legitimate penological reasons. We have no quarrel with that proposition.

Similarly, in *Toussaint v. McCarthy*, 801 F.2d 1080 (9th Cir.1986), this court dis-

---

8. Another case which supports the concept that procreative rights survive incarceration is the Third Circuit's decision in *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326 (3d Cir.1987). The court did not question whether the right to choose to have an abortion survived incarceration. *Id.* at 335. After stating that a woman has a fundamental right to choose to terminate her pregnancy, the court proceeded directly to determining whether the prison had compelling reasons to restrict the exercise of that right. *Id.*

9. Of course, in Gerber's case, the word "temporary" is not true in the practical sense, since, barring exceptional circumstances, he is serving a life sentence.

10. *See Goodwin v. Turner*, 908 F.2d 1395 (8th Cir.1990) (assuming existence of such a right, but upholding regulation at issue on the ground that it was reasonably related to legitimate penological interests). *Cf. id.* at 1402 (McMillan, J., dissenting) (stating that "there is little question that the procreative right survives incarceration" and basing its holding on *Turner, Skinner,* and *Monmouth County* ).

missed a prisoner's claim of a constitutional right to contact visitation. *Id.* at 1113 (finding denial of contact visits does not violate 8th amendment). However, again it is not clear whether we based our holding on the argument that the "right to contact visitation" did not survive incarceration or on the argument that the right did survive but that its exercise could be restricted by the prison authorities. The court stated that "the district court's findings indicate that denial of contact visitation is based on sound penological justifications." *Id.* at 1114.

Other courts have also stated that there is no constitutional right to contact visitation while simultaneously framing the discussion in terms of legitimate restrictions on a prisoner's exercise of his rights. *See, e.g., Bellamy v. Bradley,* 729 F.2d 416, 420 (6th Cir.1984) (stating that although prisoners have no absolute constitutional right to visitation, restrictions on that right must be "necessary to meet penological objectives"); *Lynott v. Henderson,* 610 F.2d 340, 342 (5th Cir.1980) (same); *Bazzetta v. McGinnis,* 902 F.Supp. 765, 769–70 (E.D.Mich.1995) (stating that prisoners' right to association is not "absolute [or] unfettered" and that first amendment rights are "necessarily curtailed by confinement").

The contact visitation and conjugal visit cases do not in any event preclude our finding that the right to procreate survives incarceration. The recognition that a general right to procreate exists during periods of imprisonment is not inconsistent with a holding that there is no specific right to conjugal or contact visits during such times, nor with the idea that a prison can restrict the exercise of the right to procreate in regard to conjugal visitation (a restriction similar to that on the right of

association). Procreation that results from the employment of recently developed methods or techniques that bypass physical contact with the prisoner's spouse is not inherently inconsistent with one's status as a prisoner. In fact, even conjugal visits and childbirth are not inherently inconsistent with such status, as the experience in California's prisons demonstrates. *See* Cal.Code Regs. tit. 15, § 3174 (2001) (regulation regarding family overnight visits for prisoners); Cal.Code Regs. tit. 15, § 3074.3 (rehabilitation program for parenting or pregnant prisoners); *see also In re Cummings,* 30 Cal.3d 870, 180 Cal.Rptr. 826, 640 P.2d 1101, 1101 (1982) (discussing prison's overnight family visitation policy); *In re Monica C.,* 31 Cal.App.4th 296, 36 Cal.Rptr.2d 910, 911 (1995) (discussing appellant's birth of child in prison).

▄ In sum, we conclude that the fundamental right to procreate survives incarceration. The exercise of that right by Gerber is, however, subject to restriction based on legitimate penological interests. The next question, therefore, is whether the existing prison regulation prohibiting artificial insemination is reasonably related to such interests.[11] *See Turner,* 482 U.S. at 96–97, 107 S.Ct. 2254.

In support of his argument for dismissal of Gerber's claim, the Warden cites three governmental interests that he claims are furthered by the policy of denying inmates the right to provide semen to their spouses for artificial insemination: the policy of treating men and women prisoners the same, when possible; safety risks caused by prisoners collecting semen; and concerns about the cost of litigation relating to the procedure.

---

11. The district court failed to reach this prong of the analysis, after concluding that the right to procreate did not survive incarceration. *Gerber,* 103 F.Supp.2d at 1219.

■ First, the Warden argues that permitting men to provide semen for artificial insemination would hamper the prison's efforts to treat male and female prisoners similarly. He notes that if men were afforded this opportunity, women would seek to be artificially inseminated, and granting women such an opportunity would lead to "obvious" and "prohibitive" burdens. The Warden's equal protection argument assumes matters not before the court or in the limited record.[12]

Further, Gerber does not seek to *be* artificially inseminated. That right, to be artificially inseminated, which certainly would apply to women, does not apply to Gerber or other male prisoners. The two sexes are not similarly situated here. In this case, we cannot ignore the biological differences between men and women. *Cf. Nguyen v. INS*, 533 U.S. 53, ——, 121 S.Ct. 2053, 2066, 150 L.Ed.2d 115 (2001) (holding no equal protection violation and acknowledging women's and men's most basic biological differences). *But see Goodwin v. Turner*, 908 F.2d 1395, 1400 (8th Cir.1990) (holding that Warden's desire to treat men and women prisoners equally justified a rule preventing male prisoners from donating their sperm). Women cannot avail themselves of the opportunity Gerber narrowly seeks—to provide a semen specimen to his mate so that she can be artificially inseminated—and men cannot do what Mrs. Gerber is likely capable of doing—conceive and give birth to a child after receiving sperm from a marital partner. Therefore, the policy of treating inmates "equally to the extent possible" is not implicated. The Warden's

argument is rejected in the context of a FED. R. CIV. P. 12(b)(6) dismissal.[13]

Next, the Warden argues that the procedure for collecting semen would create an unacceptable risk that prisoners would misuse their semen by either throwing their bodily fluids on others (a process called "gassing"), or sending their semen through the mail to individuals who do not want it. These concerns are argumentative only, in the context of a motion for dismissal under Rule 12(b)(6) and the lack of a full record. Gerber apparently has offered to pay for medical supervision of the procedure for collecting his semen specimen and Gerber's private lawyer has offered to pick up the laboratory mailer from the prison. The district court on remand can consider on an appropriate record the Warden's contentions in light of *Turner*.

■ Lastly, the Warden asserts that permitting a prisoner to provide a semen specimen would create an unacceptable risk of liability for the prison, either because of mishandling of the specimen by prison authorities or suits by women inmates seeking to be artificially inseminated. The argument that women prisoners would assert their Equal Protection rights to challenge the denial of an opportunity for artificial insemination, thereby imposing on prisons the burden of defending against such suits, cannot justify denying men their constitutional right to procreate. It is simply impermissible to restrict the constitutional rights of one group because of fear that another group will assert its constitutionally protected rights as well. Moreover, it is generally reprehensible to

---

**12.** On remand, the parties are free to move for summary judgment again on the basis of an amplified record.

**13.** A more apt parallel may be the question of whether a woman prisoner has the right to donate an egg to her lesbian partner or to a

surrogate mother. The Warden has put forth no evidence that this procedure has been requested by any prisoner, that it would be a burden on the prison, or that these two procedures are similar enough as to raise equal protection concerns.

suggest that restricting protected fundamental constitutional rights is justified by fear of increasing a party's liability.[14]

We conclude that, on the basis of the record before us, none of the rationales offered by the Warden falls within *Turner*'s proscription—that the prison may only deny a constitutional right if the regulation is "reasonably related to legitimate penological interests." *Turner*, 482 U.S. at 89, 107 S.Ct. 2254. The *Turner* court discusses several factors that are relevant in determining the reasonableness of a regulation. *Id.* at 89–91, 107 S.Ct. 2254. The rationales offered by the Warden in this case fail under the first factor discussed in *Turner*: there is no " 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it." [15] *Id.* at 89, 107 S.Ct. 2254. Therefore, we reverse the district court's decision dismissing Gerber's § 1983 claim and remand that claim for further consideration.

### B. State Law Claim

■ We now turn to Gerber's state law claim. Gerber asserts that CAL. PENAL CODE §§ 2600 and 2601 bar the CDC from preventing him from providing a semen specimen to artificially inseminate his wife.

CAL. PENAL CODE § 2600 provides that "[a] person sentenced to imprisonment in a state prison may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests." California prisoners retain the right to marry. Cal.Penal Code § 2601(e).

In *Thompson v. Dept. of Corrections*, 25 Cal.4th 117, 105 Cal.Rptr.2d 46, 18 P.3d 1198 (Cal.2001), the California Supreme Court stated that, because the language of the statute quotes the language the Supreme Court used in *Turner*, § 2600 is interpreted under the test set forth in *Turner*. *Id.* at 1206.

■ Therefore, the analysis for the state law claim is identical to the analysis of Gerber's § 1983 claim. Under California state law, the right to procreate is also a fundamental protected right. *See Johnson v. Calvert*, 5 Cal.4th 84, 19 Cal.Rptr.2d 494, 851 P.2d 776, 787 (1993). Thus, we conclude that the right to procreate does survive incarceration and that the arguments advanced as valid reasons to restrict Gerber's exercise of that right fail as a matter of law, at this stage of the proceedings. Therefore, we reverse the district court's order granting the Warden's motion to dismiss Gerber's state law claim and remand that claim also for further consideration.

### IV. CONCLUSION

The district court erred by concluding that the right to procreate does not survive incarceration. Furthermore, consideration of the Warden's arguments requires the development of a record to permit the court to determine whether legitimate penological interests exist that would justify a total ban on Gerber's exercise of his procreative rights during his period of incarceration (presumably for the rest of his natural life).

Accordingly, we **REVERSE** the district court's decision dismissing Gerber's claims

---

**14.** There may be increased administrative costs with allowing the procedure, such as increased safety and security costs. However, the Warden has not, on the limited record before us, shown this to be the case or that these costs would be overly burdensome.

**15.** It is unnecessary at this time to consider the other *Turner* factors. Satisfying the first *Turner* factor is "necessary, though not necessarily sufficient, to sustain a prison policy abridging constitutional rights." *Casey v. Lewis*, 4 F.3d 1516, 1523–24 (9th Cir.1993).

and **REMAND** this matter for further proceedings consistent with this opinion.

SILVERMAN, Circuit Judge, dissenting:

This is a seminal case in more ways than one. Contrary to all precedent, the majority today holds that a prison inmate—in this instance, an inmate serving a life sentence—has a *constitutional* right to mail his semen from prison so that his wife can be artificially inseminated. With the utmost respect, the majority's reading of the Constitution is as unprecedented as it is ill-conceived.

The majority simply does not accept the fact that there are certain downsides to being confined in prison, and that the interference with a normal family life is one of them. *Morrissey v. Brewer,* 408 U.S. 471, 482, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). It is true that inmates do not lose all constitutional rights upon incarceration. It is true that they retain the right to marry. *Turner v. Safley,* 482 U.S. 78, 107 S.Ct. 2254, 96 L.Ed.2d 64 (1987). It is true that the Eighth Amendment protects them against forced surgical sterilization. *Skinner v. Oklahoma,* 316 U.S. 535, 62 S.Ct. 1110, 86 L.Ed. 1655 (1942). All of that, however, is a far cry from holding that inmates retain a constitutional right to procreate from prison via FedEx. The *Turner* Court recognized that even though the right to marry survives incarceration, the right to have the marriage "fully consummated" is but an "expectation" postponed until the inmate is released from custody. 482 U.S. at 96, 107 S.Ct. 2254. That is why the Second Circuit held that the Constitution does not guarantee prison inmates a right to conjugal visits. *Hernandez v. Coughlin,* 18 F.3d 133, 136–37 (2d Cir.1994):

Although it is clear that prisoners have a fundamental right to marry, this consti-tutionally protected guarantee is substantially limited as a result of incarceration. Similarly, inmates possess the right to maintain their procreative abilities *for later use* once released from custody, even though this right is restricted. [citing *Skinner v. Oklahoma* ] * * * Rights of marital privacy, like the right to marry and procreate, are necessarily and substantially abridged in a prison setting.

Citations omitted; emphasis added.

In no reported decision concerning a prisoner's claim of a right to procreate from prison by artificial insemination has any court ever upheld such a right. Quite to the contrary: '

*Anderson v. Vasquez,* 827 F.Supp. 617, 620 (N.D.Cal.1992) ("no constitutional right to have an inmate's sperm preserved for artificial insemination exists") *aff'd in part, rev'd in part on other grounds,* 28 F.3d 104 (9th Cir.1994) (unpublished mem. disposition).

*Goodwin v. Turner,* 702 F.Supp. 1452, 1453–54 (W.D.Mo.1988) ("The Court has approached this novel case fully cognizant of the legal parameters, but with a willingness to stretch those boundaries as necessary to satisfy any fundamental right that petitioner may have in regard to artificial insemination of his wife. There exists, however, an insurmountable obstacle—the fact of incarceration—that necessarily restricts any decision rendered herein. * * * Regardless of the marital rights that do survive incarceration, many aspects of marriage that make it a basic civil right, such as cohabitation, sexual intercourse, and the bearing and rearing of children, are superseded by the fact of confinement.").

*Goodwin v. Turner,* 908 F.2d 1395 (8th Cir.1990) ("Even assuming, without deciding, that the exercise of Goodwin's right to

procreate is not fundamentally inconsistent with his status as a prisoner, the restriction imposed by the Bureau [of Prisons] is reasonably related to achieving its legitimate penological interest.").

*See also State v. Oakley*, 629 N.W.2d 200, 209 (Wis.2001) ("incarceration, by its very nature, deprives a convicted individual of the fundamental right to be free from physical restraint, which in turn encompasses and restricts other fundamental rights, such as the right to procreate.").

Common sense also suggests that procreation is fundamentally inconsistent with incarceration. A lawful prison sentence "constitutionally deprive[s] the criminal defendant of his liberty to the extent that the State may confine him and subject him to the rules of its prison system." *Meachum v. Fano*, 427 U.S. 215, 224, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976). "[T]hese restrictions or retractions also serve, incidentally, as reminders that, under our system of justice, deterrence and retribution are factors in addition to correction." *Hudson v. Palmer*, 468 U.S. 517, 524, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984). Because the right to procreate is "fundamentally incompatible with imprisonment itself" (the standard applied in *Hudson* ), the majority's analysis of whether there is a legitimate penological reason to abridge that right is all beside the point. There is no such right. Prisoners do not have a right to procreate while in prison.

Charles H. Whitebread, the renowned and witty professor of constitutional law at the University of Southern California, is fond of saying that some people believe that inmates retain only two rights when they go to prison—the right to serve their time and the right not to be exposed to second-hand smoke. That is not my view. I fully recognize that "[p]rison walls do not form a barrier separating prison inmates from the protections of the Constitution."

*Turner*, 482 U.S. at 84, 107 S.Ct. 2254. However, I do believe that "[c]ertainly most, if not all, reasonable minds would agree that a prohibition against artificial insemination does not subject a federal prisoner to a 'fate forbidden by the principle of civilized treatment guaranteed by the Eighth Amendment,'" *Goodwin*, 702 F.Supp. at 1455, or in this case, by the Fourteenth Amendment. And because prison inmates have no right to procreate while in prison, I would hold, as the district judge did, that the plaintiff's state law claim necessarily fails.

For these reasons, I would affirm the district court's dismissal of the plaintiff's lawsuit, and therefore, respectfully dissent.